## THE CITY OF NATCHEZ v. JAMES O. VANDERVELDE et al.

1. STATUTE OF FRAUDS: PAROL AGREEMENTS AFFECTED BY.—A parol agreement between the plaintiff and defendant in an action of ejectment, by which judg-

ment was entered for the plaintiff for the whole of the premises sued for, but the execution was to be restricted to that part only to which it was conceded his title extended, is not a contract for the sale or assurance of land and therefore not within the Statute of Frauds.

2. SAME.—A parol agreement, by which the parties to an action of ejectment stipulated that judgment should go for the plaintiff for the whole of the premises in controversy, but that his title extended only to a part, and that defendant's title was good to the remainder, and that the parties would occupy the premises in severalty, according to the agreed title, if carried out by each party taking possession of the portions conceded to him, is in effect a settlement by the parties of their claims to the parts of the land to which they are respectively entitled, and a parol partition of it, executed by possession in severalty, which it is well-settled, is valid and binding between the parties. See 4 Johns. Rep. 203; 2 Richardson, 627; *Wildey* v. *Bonney, ante,* 644.

3. EJECTMENT: MOTION FOR RESTITUTION, WHEN ALLOWABLE.—Where the declaration and judgment in an action of ejectment are general, and not definite in describing the premises, and the plaintiff takes, under his writ of *habere facias possessionem,* more than he is entitled to recover, the defendant may have restitution, by motion in the court from which the writ issued, but not when the premises are specifically described in the writ. See Adams, Eject. 241; 3 Cow. 291.

4. CHANCERY: JURISDICTION.—Equity will take jurisdiction whenever the complainant's remedy at common law has become doubtful and embarrassed by the fraudulent conduct of the defendant.

APPEAL from the District Chancery Court at Natchez.

*W. T. Martin,* for appellant.

The city is out of possession, the appellees are holding under claim of title.

Now the remedy at law, if one there be, is by action of ejectment, in which the plaintiff must recover on the strength of his own title, not the weakness of his adversary's.

True it is, that one judgment in ejectment is not final, either at common law, or by statute; Tillinghasts' Adams on Eject. 294; Hutch. Code, 877, § 84; and is not evidence on a second trial; Adams on Eject. 294; so that the recovery in ejectment by Chanche will not avail as a defence, if the city in an action prove title.

How would the city stand upon a trial? She would introduce in evidence the Rutherford and M'Neil deed, and prove, if she

could, that she had held possession under it thirty-seven years, and that defendants were in possession at the time, and there rest the case. If this were all the testimony, the verdict would be for plaintiff, and it would be all according to the bill.

But defendants on the trial would introduce in evidence the written agreement of counsel on the trial in 1840, that Barland had title. The city could show no title from Barland, so far as this bill discloses. There would then appear to be a complete outstanding title, which would be fatal to the cause of the city. For argument sake, suppose however that the possession for thirty-seven years under the Rutherford and M'Neil deed, gave the city title, upon which she could recover any part of the premises in controversy, and the defendants introduced in evidence the Barland deed of 1802; it is older than that of Rutherford and M'Neil, and it describes the property therein conveyed as, " The lot in said town," (Natchez) " which has been used as a Roman Catholic burying ground." Part of the square had been so used according to the bill, and the grantees did enter upon part of the square, under the deed. But entry upon part claiming the whole, is equivalent to an entry upon the whole. 3 Johns. Cases, 109.

The bill alleges, that by the fraud of part of defendants in this cause, the city was induced to let the judgment in ejectment against her remain undisturbed, until the witnesses, by whose testimony the true limits of the burying ground could have been restricted to lot No. 2, were dead, and the city could not therefore confine the extent of the adverse claim to its just boundaries.

But the bill alleges, that by the lapse of time and death of witnesses she lost her remedy, as she could not go back so far as 1802 or 1817, and prove possession; and this because of the fraud. Since the trial in ejectment, almost twelve years have elapsed. What would have availed as a defence then, fraud prevented her from using. Twenty years adverse possession, if proven then, would have been a good defence, and have left the city in possession, except as to the sixty feet. Hutch. Code, 825, §§ 1, 2.

By fraud, the city has been ousted and has lost her possession, which would have been good as a defence. The appellees claim the fraudulent advantage gained, and say you have your remedy at

The City of Natchez v. Vandervelde et al.

law.   As defendant at law, the city was safe by reason· of the possession ; as plaintiff out of possession she can do nothing.   2 Story, Eq. § 885.

If there is no remedy by an action of ejectment, neither can a writ of error be sued out to the judgment in ejectment of 1845, because of the limitations of three years.   Act of 1830.   Hutch. Code, 931, § 4.

Courts of equity will assume jurisdiction, where a *plain, adequate* and *complete* remedy cannot be had in courts of law.   Cooper, Eq. Pl. 128, 129; Mitford, Eq. Pl. by Jeremy, 112; 1 Story, Eq. Jur. § 33.   It is not enough that there is a remedy at law, i must be *plain* and adequate.   *Boyce's Ex'rs* v. *Grundy*, 3 Peters, 245.   If the legal remedy would be embarrassed and inadequate, equity will entertain jurisdiction.   *Peace* v. *Nashville*, 10 Yerg. 179.   Or if the remedy is doubtful.   *American Ins. Co.* v. *Fisk*, 1 Paige, R. 90 ; *Rathbone* v. *Warren*, 10 Johns. 595.   If the remedy is more complete in equity, chancery courts will take jurisdiction. *Barnes* v. *Lloyd*, 1 How. 584 ; *Cable* v. *Martin*, Ib. 558 ; *M'Rae* v. *Walker*, 4 Ib. 455.

The jurisdiction is here plain, because of the fraud practised. Fraud is well defined by Jeremy, to be any device by means of which one party has taken an unconscientious advantage of another.   Jeremy, Eq. Pl. B. 3, part 2, p. 358.

"In all cases where, by accident, mistake, fraud, or otherwise, a party has an unfair advantage in proceedings in a court of law, which must necessarily make that court an instrument of injustice, and it is therefore against conscience that he should use that advantage, a court of equity will interfere."   2 Story, Eq. § 885; *Webster* v. *Skipwith*, 4 Cushman, 341.

And this is a case directly in point.   See, also, a strong case, *Bond* v. *Hopkins*, 1 Sch. & Lef. 430 ; *Gill* v. *Carter*, 6 J. J. Marshall, 484.

"And if such unfair advantage has been already obtained by proceedings at law to a judgment, it will, in like manner, control the judgment, and restore the injured party to his original rights." 2 Story, Eq. § 885; Eden on Inj. ch. 2, p. 3; Mitf. Eq. Pl. (Jeremy,) 127-133 ; 4 Cushman, 341.

Again, equity would take jurisdiction to compel a specific performance of the contract and agreement set out in the bill. This agreement is admitted by the demurrer to have been made. It was a good contract—having all the essentials—and is clearly and expressly set out in the bill.

Equity will decree specific performance of a contract not in writing, where there has been a part performance. 2 Story, Eq. § 759, and authorities cited; *Attorney-General* v. *Day*, 1 Vesey, 221; *Whitchurch* v. *Bevis*, 2 Bro. C. C. 559; 1 Fonblanque, Eq. ch. 3, § 8, note (*e*); 14 Johns. 15-31; 8 New Hampshire, 9-13; *Lister* v. *Foxcroft*, 1 Lead. Cases in Eq. 557, a leading case, a contract respecting land, upon a parol agreement to grant a lease. See, also, 1 Gill, 383; 13 Conn. 479.

And this, upon the ground that the part-performance puts the party in a situation which is a fraud upon him. 2 Story, Eq. § 701-703, and the authorities there cited; 3 Gill & Johns. 127; 6 Barbour, Sup. Ct. R. 99-106.

Delivery of possession will constitute part-performance, or entry by vendee with vendor's consent, and making valuable improvements. 4 Blackford, 94, 98, 383; 14 Johns. 15; 8 New Hamp. 9, 18; 9 Ib. 380; 18 Conn. 222; 5 Binney, 129; 3 Watts & Serg. 56.

These parol contracts, even where they come within the Statute of Frauds will be enforced, because of the fraud practised upon the party seeking relief; for the statute was intended to prevent fraud, and would fail of its purpose, if used as a means of fraud.

But this agreement does not fall within our Statute of Frauds, which differs very materially from the English statute. Our statute provides, that "No action shall be brought" * * * "upon any contract for the sale of lands, tenements, or hereditaments (or the making any lease thereof for a longer term than one year);" and and this is the only clause which could cover this agreement. Hutch. Code, 637, § 1.

The English statute, on the other hand, is broader, and has this language: "Upon any contract or sale of lands, tenements, or hereditaments, or *any interest in* or *concerning the same*." 2 Story, Eq. § 752.

This argument might have been obnoxious to the English sta-

tute, because of the provision concerning "any interest in or concerning the same." There is nothing of this sort in our statute. The agreement here was not for any sale.

A court of equity certainly had jurisdiction to enjoin the defacing and spoliation of the graves, and the excavation of the earth; and that jurisdiction having attached, it would go on to give full relief. 1 Story, Eq. § 64, note (*k*) and authorities; *Cathcart* v. *Robinson*, 5 Peters, 262.

We think, therefore, that the demurrer in this case should have been overruled.

1. Because there is no plain, adequate, and complete remedy at law.

2. Because of the fraud of Chanche.

3. Because the bill shows a proper case for a decree for specific performance.

4. Because the allegations of the bill entitle the appellant to ask for an injunction.

*R. North,* on same side.

We insist that in equity we are entitled to relief by specific performance or perpetual injunction against the judgment at law.

The agreement was a valid contract not required by the Statute of Frauds to be in writing, which, unlike the English statute, applies only to a *sale* of lands. Hutch. Code, 637. It has been fully executed by appellants; and to prevent a fraud upon them, specific performance by appellees is indispensably necessary. 2 Story's Eq. §§ 759, 761.

"*For the hard conscience*" of the parties in availing themselves of the scope and rigor of a judgment thus obtained, equity will interpose to "*frustrate*" the judgment. Earl of Oxford's case, in 2 Lead. Cas. in Eq. part 2, p. 80.

In suing out the *scire facias* the appellees discovered a fraudulent intent from the beginning. By the fraud the appellants were prevented from restricting the judgment, and appellees obtained a recovery embracing land to which they admitted they had no title. If the appellees had not fraudulently acquiesced in the possession of appellants, and agreed to relinquish their claim upon the protestant

cemetery, the testimony of witnesses then living would have shown them to be without title, and they would have been by the judgment, confined within their legal boundaries.

The appellants committed no fault. They properly relied upon the agreement. A violation or disregard of the agreement is against conscience, and equity will not permit it.

" Any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law, or of which he might have availed himself at law, but was prevented by fraud or accident, unmixed with any fault or negligence in himself or his agents, will justify an application to chancery." Marshall, C. J. in *Marine Ins. Co.* v. *Hodgson,* 7 Cranch, 332 ; 2 Story, Eq. §§ 885, 887.

Whenever a defendant at law is prevented from defending an action by the fraudulent assurances of the plaintiff that the suit shall be carried no further, or that no defence is necessary, chancery will interfere to prevent the guilty party from profiting by his own fraud. *Pearce* v. *Olney,* 2 Conn. 544 ; *Weyrich* v. *De Zoya,* 2 Gilm. 385 ; *Truitt* v. *Wainwright,* 4 Ib. 418 ; *Brooks* v. *Whetson,* 7 S. & M. 313 ; *Webster* v. *Skipwith,* 4 Cushm. 341 ; *Huggins* v. *King,* 3 Barb. Ch. R. 616 ; *Powers* v. *Butler,* 3 Green, Ch. 463 ; *Carrington* v. *Holibud,* 17 Conn. 530 ; *Marine Ins Co.* v. *Hodgson,* 7 Cranch, 332 ; *Emmerson* v. *Udall,* 13 Vermont, 477 ; *Fletcher* v. *Warren,* 18 Ib. 45.

This court in *Webster* v. *Skipwith,* 4 Cushm. 341, said " that in all cases where by accident, mistake, fraud or otherwise a party has an unfair advantage at law, which must necessarily make that court an instrument of injustice, and it is therefore against conscience that he should use that advantage, a court of Equity will interfere and restrain him from using that advantage."

The cause made by the bill is purely equitable, and the cognizance of a court of equity is necessary to a proper determination. In such cases chancery will interfere either before or after judgment. *Ferriday* v. *Selcer,* Freem. Ch. R. 258 ; *Miller* v. *Gaskins,* 1 S. & M. Ch. R. 524 ; *Fanning* v. *Dunham,* 5 Johns. Ch. R. 122 ; *Skinner* v. *White,* 17 Johns. R. 357.

And an unsuccessful attempt to set up at law a purely equitable

defence will not preclude the right of a subsequent recourse to equity. *Nelson* v. *Dunn,* 15 Ala. 501; *White* v. *Washington's Ex'ors,* 5 Grattan, 645; *Power* v. *Reeder,* 9 Dana. Nor will a failure to take advantage of a good legal defence operate as a bar to an application for an injunction founded on the existence of an equitable defence. *Greenlee* v. *Gaines,* 13 Ala. 798.

An estoppel of a judgment does not extend to subsequent or collateral matter, especially when of equitable cognizance : and execution of a judgment may be restrained upon equitable grounds subsequent to the judgment. *Gridly* v. *Garrison,* 4 Paige, 647 ; *Simpson* v. *Hart,* 14 Johns. 63.

*J. Winchester,* for the appellees.

The object of the bill is two-fold. First. For the specific performance of a parol agreement concerning lands; and, Second, For the restitution of the possession of the lots No's 1, 3, and 4, of which the plaintiffs had been dispossessed under said judgment in ejectment. We think it is very clear that the court has no jurisdiction on either branch of the case. The parol agreement is most clearly void under the Statute of Frauds, which provides that "No action shall be brought whereby to charge any defendant upon any contract for the sale of lands, &c., or upon any agreement which is not to be performed within the space of one year, &c., unless the agreement, &c., be in writing, and signed by the party to be charged therewith, &c. It is true, that courts of chancery have, under certain circumstances, in the very teeth of this statute, enforced parol agreements concerning lands. But the case made by the bill does not come within the rule adopted by courts of equity. In a case like the one under consideration, there must not only be a part-performance of the agreement, but it must be shown that there was a *valuable consideration* paid. The bill states that the defendants had title only to lot No. 2; that they becoming satisfied, from the testimony of their witnesses, since dead, that they could not establish their claim to more than lot No. 2, admitted and agreed that they had no title to lots No's 1, 3, and 4, and were accordingly let into possession of lot No. 2, only. Such an agreement was voluntary, merely, and could not be specifically

enforced in equity, even though there were acts of part-performance on the part of the plaintiffs, which would otherwise take the case out of the Statute of Frauds. But the acts of part-performance are wholly insufficient in themselves. If the plaintiffs were deceived into giving up the possession of the whole of lot No. 2, by reason of the alleged agreement of defendants not to claim lots No's 1, 2, and 3, they did nothing more than what they admit they were legally and equitably bound to do. The defendants were entitled to the possession of the whole of lot No. 2, and the plaintiffs were trespassers upon a part of said lot, according to the statements of the bill; and if the defendants used the artifice of the parol agreement to get possession of it, they acquired nothing more than what they were justly entitled to, and the plaintiffs were not damnified thereby; and the parol agreement not to claim title to lots No's 1, 3, and 4, cannot be enforced against the defendants. But the bill states that the defendants have no title to lots No's 1, 3, and 4, and can show none, and did show none on the trial of ejectment suit. If so, what is there for the parol agreement to operate upon, and why should they come into this court, where legal titles to land are not cognizable, for a specific performance? In this view of the case, it is not a bill for specific performance of a parol agreement, but a question of the strength of the legal title alone, over which a court of equity has no jurisdiction.

On the second ground of relief asked, viz.: for the restriction of the possession acquired under the writ of *habere facias*, which is alleged to have been wrongfully obtained; admit all of the statements of the bill, it presents but a naked case of trespass, for which the plaintiffs had a plain and adequate remedy at law. First. There is no impediment in the way of an action of ejectment against the defendants. The judgment in ejectment, which this court is asked to enjoin, has, according to the statements of the bill, spent its whole force, and has become wholly inoperative for any purpose. The defendants cannot even justify their possession under it—that is, if it be true that they have no title to lots No's 1, 3, and 4. They became, and were naked trespassers, for which they were liable to the plaintiffs in damages in an action at law, but not in chancery. "By the judgment in ejectment," says

Adams on Ejectment, 294, "the plaintiff's lessor obtains possession of the lands recovered by the verdict, but does not acquire any title thereto, except such as he previously had. If, therefore, he have a freehold interest in them, he is in as a freeholder; if he have a chattel interest, he is in as a termor; *and if he have no title at all, he is in as a trespasser, and liable to account for the profits to the legal owner, without any entry on his part; the verdict in ejectment being no evidence in a subsequent action, even between the same parties.*" *Jackson* v. *Duffendorf*, 13 Johnson, 270.

Again; the remedy of plaintiffs, by a summary application to the Circuit Court of Adams, was plain and adequate, if it was true that the defendants had shown no title to lots No's 1, 3, and 4, at the trial of the ejectment; and the application should be made to that court, and there is no remedy in equity by reason of a failure to make the application and proof to that court.

In ejectment, where the declaration, and verdict and judgment are general, the plaintiff, under the writ of *habere facias*, may take possession to any extent he chooses, at his peril, subject to be put right by the court. If he take too much, the court will, upon motion, order a restitution. *Lively* v. *Ball*, 8 Dana, 312; *Jackson* v. *Rathburn*, 3 Cow. 291; *Jackson* v. *Stiles*, 5 Ib. 418; *Jackson* v. *Hasbrouck*, 5 Johns. 366; *Breading* v. *Taylor*, 6 Dana, 226; *Den* v. *Hamlin*, 3 Harr. 127.

The remedy of the plaintiffs is at law and not in chancery. The death of witnesses Dunbar and Harrison, cannot, in any manner affect the recovery of the plaintiffs in a suit at law. In an action of ejectment their evidence is not necessary to establish the title of plaintiffs, and could only become useful to plaintiffs to rebut evidence of defendants' title. And according to the theory of the bill, the defendants not only have no title, but no evidence of any title. On a motion for restitution, the evidence of the respective jurymen, the counsel of both parties, and the recollection of the judge who tried the cause, and of the persons present at the trial could be had, as to the extent of the title proven and shown by the plaintiffs in ejectment; and the court giving the judgment would limit the possession to such title.

It may be contended, that inasmuch as the bill alleges that the judgment in ejectment was obtained by fraud, and the possession acquired under it was fraudulent, the Court of Chancery has jurisdiction on that ground.

It is not alone sufficient to allege fraud, to give a court of equity jurisdiction; the plaintiff must show that he has suffered injury by reason of the fraudulent acts of the defendant, for which there is not an adequate remedy at law. If this were not the rule, every case of false warranty, of deceit in the sale of personal property, of slander, libel, &c.; nay, every action for injury, to either person or property, in which it could be alleged that the injury was occasioned by the fraudulent acts of the defendant, (and in nearly every case at law the allegation is or can be made,) would be removed from the common law courts into chancery. The remedy at law and the adequacy of it cannot be disputed in this case. The statute guarantees to the plaintiffs and defendants two trials more in ejectment, before either party shall be concluded at law; and the plaintiffs cannot be heard in equity until they have exhausted their remedy at law.

HANDY, J., delivered the opinion of the court.

The material facts stated in the bill in this case are in substance, that in the year 1837, the City of Natchez purchased from Rutherford and M'Neil, certain real estate within its corporate limits, described as lots No. 4, and part of lots No's 1 and 3, in square No. 30, on the plat of the city, for the purpose of a burying ground, and as such to be kept by the city, and the same was conveyed to them by deed, under which they took possession, and have continued in possession for the purpose specified, until dispossessed, as stated afterwards; that at the time of that purchase, the Roman Catholic Society had possession of lot No. 2, in square No. 30, under a deed from one Barland, made in the year 1802, that lot being described in the deed as "the lot in said town which has been used as a Roman Catholic burying ground;" that the Catholic burying ground never extended beyond lot No. 2, and at the date of the deed to the Roman Catholic Society, the square No. 30 had been divided into the lots above-mentioned;

that in the year 1841, the trustees of the Roman Catholic Society, by deed, conveyed to Joseph Chanche, Roman Catholic Bishop of Natchez, the same premises conveyed by the deed of Barland to them, described as "the Roman Catholic burying ground;" that Chanche died in July, 1852, having by his will devised the premises to Anthony Blanc, who, in the year 1853, by deed, conveyed the same to James O. Vandervelde, Bishop of Natchez, who took, and has since held possession; that in the year 1843, Chanche instituted an action of ejectment against the City of Natchez, claiming title to the whole of block No. 30, and when that suit came on for trial, it was admitted, on the part of the plaintiffs, that the Roman Catholic Society, in whose behalf the action was brought, were not entitled, under the deed from Barland, to any part of lots No's 1, 3, and 4, or to more than lot No. 2; which admission was made on the testimony of certain named witnesses, who are since deceased, who testified that the Roman Catholic burying ground was on lot No. 2; and it was also admitted by the defendants, that their enclosure included part of lot number two, embracing sixty feet front, and running back one hundred and sixty feet to lot No. 4, and to that extent the plaintiff was entitled to recover; that when the title of the parties to their respective parts of the property was first ascertained, it was proposed that a survey should be had to ascertain the respective parts, but this was adandoned, upon the understanding between the parties, that the plaintiffs would only demand, or take possession of, the part to which they were entitled as above stated, and acting in faith of that agreement, that the defendant made a written agreement which was filed, stating that both parties claimed title under Barland, and permitted a judgment to be rendered for the entire premises claimed in the declaration; that afterwards a survey of the premises was duly made by the consent of the parties, in accordance with the previous agreement, made when the judgment was rendered, by which it was found that a part of lot No. 2, being sixty feet front, and running back one hundred and sixty feet, was then, and at the time of the rendition of the judgment, within the enclosure of the defendants' lots; and in compliance with the previous agreement, the city gave up possession thereof to Chanche,

in behalf of the plaintiff in the judgment, who soon afterwards erected a large edifice upon it, and he and his successor have since held it in possession, and put a division fence upon what was settled to be the boundary line between lot No. 2 and the adjoining lots of the same square; and in virtue of the same agreement, the city, some time after the survey, with the knowledge and acquiescence of Chanche, made costly improvements on lot No. 4, and the parts of lots Nos. 1 and 3, belonging to them.

The bill charges that the judgment would not have been rendered but with the understanding above stated, as to the limited extent of the plaintiffs' claim, and that no further claim would be attempted to be enforced under the judgment; that in violation of that agreement, Chanche sued out a *scire facias* to revive the judgment, and to have it executed as to the residue of the lots embraced in its terms, and notwithstanding the effort of the city to resist it, upon the equitable grounds above stated, the judgment was revived, and execution has been issued, under which the city has been turned out of possession, and the possession delivered to Vandervelde, who has used it for improper purposes, and defaced it as a burying ground, and is about to excavate and remove the earth, destroying the graves, and thereby causing a forfeiture of the estate of the city, by putting an end to the purpose and use for which the premises were conveyed to them.

The prayer is for a specific performance of the agreement, for a restoration of the premises to the possession of the city, for an injunction against setting up the judgment in ejectment, or holding possession to the premises claimed by the complainant, and against damage to the premises, by removing the fences, earth, or otherwise interfering with the property.

The defendants filed a general demurrer to the bill, which was sustained; from which decree this appeal is taken.

The first objection taken to the bill is, that it seeks to enforce a specific performance of a parol agreement concerning lands, which is void under the Statute of Frauds.

The substance of the agreement, as stated in the bill, is, that upon the trial of the action of ejectment, which was for all the lots, it was ascertained by the plaintiffs, and admitted on their part,

that they were only entitled to lot No. 2; and on the part of the appellant, it was admitted that the city had, within its enclosure, part of that lot, and thereupon it was agreed that the recovery should really be confined to the part of lot No. 2, in the possession of the appellant, and that the judgment, which in terms embraced all the lots, should not be enforced against lots Nos. 1, 3, and 4, which were then in the possession of the appellants, and under that understanding the judgment was rendered; and accordingly, that the Roman Catholic Society, through its bishop, took possession of the part of lot No. 2, embraced in the agreement, without execution issued, and by the voluntary surrender of the appellants, and by consent, the appellants retained possession of the other lots.

We do not consider this agreement to be within the Statute of Frauds.

It is not a contract for *the sale or conveyance of lands,* nor does it contemplate any act to be done by the plaintiffs in the action, by way of assurance or conveyance of the title to the lots held by the city. It was simply an agreement as to the *execution of the judgment,* and as to the extent to which it should operate. No title to the city was intended to be derived from it; for under the written agreement made between the parties, they both claimed title to their respective parts of the land from Barland independently, neither claiming any right through or under the other. The judgment did not *ipso facto* vest a title in the plaintiffs, but only entitled them to recover possession of the premises to the extent to which it might rightfully operate. By its terms it covered all the lots; but by the agreement, its operation was restricted within certain limits. The obvious purport of the agreement was, not that it should entitle the defendant to the lots in her possession and claimed as her property, but that the plaintiffs should not attempt to enforce their execution. Its effect was entirely negative. The extent to which the plaintiffs should enforce the judgment was a very different question from their right and title to the lots claimed by the defendants, and which by the agreement was virtually admitted to be the property of the defendants; and that the judgment had relation to the possession of land, does not ren-

der the agreement as to the extent to which it should be enforced, the less a mere agreement as to the operation of the judgment, or make it an agreement in relation to the sale or conveyance of lands within the Statute of Frauds.

Such being the true character of the agreement, the judgment was as much subject to its control as a judgment affecting the possession of personal property, and could no more be enforced in violation of an agreement upon which it was rendered, than such a judgment.

But giving to it all the force to which it is entitled, as an agreement directly affecting the title to lands, it is plain that it is but an agreement between parties claiming title to adjoining lands, that each should take and hold possession of specific parts, with possession delivered under that agreement. Such an agreement is neither within the letter nor spirit of our Statute of Frauds, which merely requires that " any *contract for the sale* of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one year," shall be in writing. It is in effect a settlement of the claims of parties to the parts of the lands to which they were respectively entitled, and a surrender of all claim to any other part than that agreed to belong to each. There is no substantial difference in principle, between such an agreement, when carried out by taking possession in severalty under it, and a parol partition of lands, between parties in possession and claiming title, accompanied and followed by possession by each party of the part conceded to him ; and such partitions are held to be valid and binding upon the parties. *Jackson* v. *Harder*, 4 Johns. 203; *Slice* v. *Derrick*, 2 Richardson, 627; *Wildey* v. *Bonney*, decided at this term, *ante*, 644. And upon the same principle, a parol agreement, fixing boundaries, followed by actual possession under it, would not be within the statute, and would bind the parties. The agreement, when carried out by a division and possession in these cases, would conclude the parties ; and the agreement in this case, followed by the possession taken and held by the parties in pursuance of it, cannot be distinguished from the principle of these cases.

The next objection taken to the bill is, that the appellants'

remedy, if any, was at law, by action of ejectment, or by motion in the Circuit Court, for restitution of the possession of the lots of which the appellees had taken possession, without right or title. It is insisted in behalf of the appellants, that there was no clear, unembarrassed, and adequate remedy at law.

With respect to the remedy by a new action of ejectment, it is true that the recovery in the former action would not bar an action by the appellants, to recover the possession of the lots from the appellees, to which they had no title. But according to the allegations of the bill, this remedy would be attended with difficulties, and would be of doubtful success.

The title of the appellants is alleged to be under a deed from Rutherford and M'Neil, made in 1817, and possession held under it. Possession under that title for such a length of time, would have been sufficient to prevent the plaintiff's recovering in the original action of ejectment. But it was admitted by the parties, by a written agreement made in that cause, and as the bill alleges, in order to effect the amicable adjustment which was intended to be made, that both parties claimed title under Barland; and it further appears that Barland conveyed to the plaintiffs by deed dated in 1802, the lots which were used as a Roman Catholic burying ground. Whether that deed embraced the lots claimed by the appellants, depended upon the testimony of witnesses, who were introduced on the trial in the action of ejectment, as is alleged, and who proved that it only embraced lot No. 2. But these witnesses are since dead, and the appellants have lost the means of making that proof. If upon the trial of an ejectment brought by the appellants against the appellees, the latter were to introduce this agreement in writing, that both parties claimed title from Barland, and show the deed from Barland to the appellees and possession by them, under that deed, of a part of the premises, claiming the whole, this evidence would tend strongly to destroy the appellants' claim under the deed of Rutherford and M'Neil, and would probably defeat a recovery, unless it could be shown that the Roman Catholic burying ground conveyed by the deed of Barland, only embraced lot No. 2. And according to the allegations of the bill, that proof is lost, or at least, is rendered very doubtful, by the death of the

witnesses upon whose testimony it was shown on the former trial. These disadvantages under which the appellants labor, have been occasioned, as is alleged, by the admissions and agreements made on the trial between the parties, and through confidence in the good faith of the plaintiffs in that suit, with a view to an amicable settlement of their respective rights, and after the claim of the appellant had been established. If the statements of the bill be true, the legal remedy is doubtful and embarrassed, and the appellants have been placed in that position by the violation of an agree- in the former suit, which was intended as a settlement of the respective rights of the parties. Under such circumstances, they should not be driven to a doubtful remedy, and have a right to insist in equity upon the agreement.

As to the remedy by motion in the Circuit Court for restitution, it is manifest that was not available in this case. Where the declaration and judgment are general, and not definite, in describing the premises, and the plaintiff takes under his *habere facias* more than he is entitled to recover, the defendant may have restitution by motion in the court from which the writ issued. But not so, when the premises are specifically described in the judgment, as was the case here. Adams, Eject. 241; *Jackson* v. *Rathbun*, 3 Cow. 291.

But moreover, no execution was issued to enforce the agreement, and it was voluntarily carried out by the parties. Afterwards, when the *scire facias* was issued to revive and enforce the judgment beyond the agreement, the appellants resisted it by the defences set forth in this bill; but they were held to be insufficient, it is presumed, because they were equitable in their nature, and not allowable to annul a judgment in a court of law.

Finally, as to the general equity of the case, the bill shows in effect that the respective rights of the parties to the several lots, were agreed to be settled amicably in the ejectment suit, and that, though a general judgment for all the lots was rendered for the plaintiffs, they were only entitled to lot No. 2, and that possession of that lot should be delivered up to them without execution; that possession was surrendered by the appellants accordingly, the other lots being retained—under the agreement and with the assent of

the plaintiffs—by the appellants; that the appellants' right to the lots retained by them was established on the trial, but that the judgment was not rendered accordingly, because the plaintiffs in the action agreed that their rights should be amicably settled as agreed on, and the city relied upon the good faith of the plaintiffs, in consequence of which the means of establishing its rights are either lost or rendered doubtful, and the plaintiffs, after having obtained all that they were entitled to and had agreed to receive, have availed themselves of the general terms of the judgment to deprive the appellants of their portion of the property which they retained under the settlement made between the parties.

If these allegations be true, it is manifest that it is a case of unconscientious advantage, which a court of equity should redress. In equity, the agreement of the parties and their acts in carrying it out, must be regarded, under the circumstances of the case, as not only an agreement that the judgment should not be enforced against the lots claimed by the appellants, but as a settlement of their respective rights to the lots of which they had possession after the agreement was carried out. For the agreement, as stated, was to be carried out without legal process, and was actually carried out by amicable partition. Under such circumstances, the acts of the appellees are equivalent to a partition, and conclude them from any further claim upon the lots claimed by the appellants.

The decree must be reversed, the demurrer overruled, and the defendants below required to answer the bill within sixty days.