# Mellon et al. *versus* Reed et al.

1.  Where a widow is entitled to the possession of land during the minority of her youngest son without condition, and after he attains his majority under certain conditions; she and the heirs of her deceased husband may make an amicable partition of the land, upon her youngest son attaining his majority.   It is not essential that this partition should be evidenced by deed, or even by writing.

2.  A partition which merely severs the relation existing between tenants in common, in the undivided whole, and vests title to a correspondent part in severalty, is not such a sale or transfer of title as will be affected by the Statute of Frauds.

3.  It is not necessary that a certain portion or allotment of the land in kind should be given to each of the tenants in severalty, if it appears that the partition is fully executed, and that each has accepted and received his purpart either in kind, or by payment in money or otherwise.

4. Where the owner of a mortgage on an undivided interest in land is at the same time the owner in fee of another undivided interest in the same land, a possession of the land wholly consistent with his right as a tenant in common, cannot in an ejectment be considered the possession of a mortgagee, unless the fact be shown that the possession had been previously acquired and was afterwards retained as such.

November 9th, 1886.    Before GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.    MERCUR, C. J., absent.

ERROR to the Court of Common Pleas No. 2 of *Allegheny county :*    October Term 1886, No. 208.

Ejectment by Iolia M. Reed and Lavina B. Reed by their guardian, Michael DeWalt, against Thomas Mellon and W. L. Scott for one undivided third part of fifty acres of land in Elizabeth township, Allegheny county, being a part of a larger tract of which Lewellen Howell, Sr., died seized. Defendants filed a statement denying plaintiffs' claim and alleging possession of plaintiffs' interest in the land under an overdue mortgage of plaintiffs. The following are the facts of the case as they appeared on the trial before WHITE, J.

Lewellen Howell, Sr., died in 1823 seized of a certain tract of land of 250 acres including the land in dispute. He died testate leaving surviving him a widow Mary, and eight children, Esther, Martha, Sarah, John, Lewellen, Andrew, Philip and James.

The following is a clause from his will which was duly probated :

" To my loving wife, Mary, the use of my farm until my son, James, arrives at the age of twenty-one years, except such property as has been named to my children yet at home, by me, at which time the place to be sold by my executors, and two thirds of the proceeds to be equally divided to and amongst my heirs, and the one third to be at interest for the use of my said wife; but if, in the opinion of my said wife, such sale would be prejudicial to her interest, she may detain the sale, and possess the land by paying the two thirds of the rent as long as she sees cause, or during her state of widowhood; but if she should marry she is only to have an equal part with one of the children. All the surplus property which will be remaining at the death of my said wife to be sold and the proceeds equally divided amongst my children."

The widow did not sell but retained the farm and kept the family together so long as they remained unmarried. John married in 1836 or 1837, some thirteen or fourteen years after the father's death. After John's marriage, Lewellen was the head of the household at home, and when it became necessary for John to go to housekeeping the mother divided off half the farm to him, retaining the other half, with the dwelling and

improvements to herself and those of the children yet with her; and John built himself a house on his part, and Philip went to live with him. This partition, which is styled a partition between John and Lewellen, was made some time between 1835 and 1838. It was in the mother's lifetime and during her life estate in the land. There was no evidence on the trial that James had attained his majority at the time of this partition. Lewellen remained single and resided with his mother till his death which occurred in 1851, according to the probate of his will; and his mother the widow of Lewellen, Sr., died two years afterwards, in 1853. Lewellen, Jr., devised the portion of the farm on which he lived subject to certain legacies to his brothers and sisters, and his mother's dower interest to his brothers James and Andrew for life with the remainder to their children. The will also provides that James and Andrew shall release unto John and Philip all claim they or either of them may have on the land on which John and Philip reside. John bought out the interests of all these heirs except James and Andrew, some before his mother's death and some afterwards, and after her death took possession of the homestead part of the farm, called Lewellen's part, comprising 129 acres, and placed a tenant in possession. At the time John went into possession of the homestead or Lewellen part, after his mother's death, he had not bought the shares of James or Andrew in the father's farm or either part of it; and as he and they could not agree on terms, they brought an ejectment suit in 1856 against him and his tenant, for the homestead 129 acres which was called Lewellen's and which he had willed to them.

On the 8th day of October, 1856, at No. 531 November Term, 1856, in the District Court of Allegheny county, an action of ejectment was brought by James and Andrew Howell to recover from John Howell, Philip Swanger, Sr., and Philip Swanger, Jr., tenants of John Howell, 129 acres of land in Elizabeth township, as the property of which Lewellen Howell, died seized, the *præcipe* wherein describes it as being bounded on one side by the property of John Howell, one of the defendants.

On the 19th day of December, 1857, a verdict was rendered in the ejectment case in favor of James Howell for 50 acres, to be run off of the northern part of the land described in the writ, designating the point of commencement and the direction of the line that was to embrace the 50 acres.

This verdict provided that James should pay the legacies of $100 each, bequeathed by Lewellen Howell, Jr., to John and Philip Howell, in one year from date, without interest, and that James Howell and wife should execute and deliver to *John Howell* a deed of release and quit claim for all their interest in

the *residue* of the land of which Lewellen Howell, Sr., died seized. As to the residue of the land described in the writ, the verdict was for the defendants.

At No. 388, April Term, 1858, on application of James Howell a writ of *habere facias possessionem* was issued on the judgment in ejectment and the return thereon shows that possession was delivered to James Howell on April 4th, 1858. An *al. hab. fa.* was afterwards issued and possession was again delivered to James Howell on May 20th, 1858.

After James Howell was placed in possession of the 50 acre tract he occupied it until the time of his death which occurred in the year 1880. At the time of his death he left surviving him two children, James R. and Mary Howell, and two grandchildren, Iolia M. and Lavina B. Reed, minor children of a deceased daughter, Rachel Reed.

James Howell, the life tenant, on the 6th day of June, 1864, entered into an agreement with Thomas Mellon to sell the coal underlying this tract of land, it being provided therein that in case it was ascertained that "Robert Woods is entitled to an undivided interest in said coal or to a share in part of the purchase money the proper deduction is to be made from the one or the other, as the case may be, from the amount to be paid Mr. Howell." This sale was consummated by a deed from James Howell and wife to Thomas Mellon, one of the defendants below, bearing date of September 24th, 1866, conveying an undivided two thirds of the coal underlying said tract. All the coal underlying this tract was by deed dated 22d day of November, 1881, conveyed by Thomas Mellon to W. L. Scott, the co-defendant with Mellon.

On the 4th day of February, 1879, during the lifetime of James Howell, the life tenant, Mary Howell, his daughter, quit claimed to Thomas Mellon, one of the defendants, "All her rights, title, interest and claim to the property therein described [being the 50 acres described in plaintiffs' writ] including the coal and surface, whether said right or claim be in possession, reversion, remainder or in expectancy hereafter." On the 9th day of March, 1879, during the lifetime of James Howell, the life-tenant, James R. Howell, his son, quit claimed all his right, title and interest in this same tract, using the same language as in the deed of Mary Howell, above recited.

The plaintiffs below, the guardian of the minor children of Rachel Reed deceased, who was a daughter of James Howell, sought, in this action, to recover the undivided one third part of this 50 acre tract, to which they are entitled under the will of their grand-uncle, Lewellen Howell, Jr., as the representatives of one of three children of James Howell, the devisee of a life estate in said tract.

[Mellon v. Reed.]

The defendants held a mortgage on the interest of the plaintiffs in the land in dispute upon which judgment had been obtained on a *scire facias*.

During the trial the defendants offered to show by Peter Murray that he is in exclusive possession of the land, that is of the surface land in dispute since 1882, before the bringing of this suit, claiming title by purchase from Thomas Mellon, one of the defendants. This to prove that plaintiffs on a judgment in their favor could not execute a *hab. fa. possessionem* by reason of omission to join the party in possession of the surface as well as those in possession of the coal in the land, and to rebut plaintiffs' allegation of defendants' possession.

Objected to as incompetent and irrelevant for the following reasons: The possession of the defendants is admitted in their counter statement. If the witness is in possession he is a party in interest and incompetent to testify in this action, and further, that this action is not only against Thomas Mellon, the owner of the land, but against W. L. Scott, who is the owner of the coal, and if this witness is in possession at all he is only in possession of the surface and not of the coal; and objected to generally as incompetent.

Objection sustained, exception taken and bill sealed.

Defendants' counsel offer to show by the same witness on the stand (Peter Murray) how much coal there is in the land.

Objected to as incompetent and irrelevant.

Objection sustained, exception taken and bill sealed. (First assignment of error.)

The plaintiffs presented *inter alia* the following points for charge:

1. That although the jury should find that Thomas Mellon, one of the defendants in this case, was the *bona fide* owner of the mortgage in evidence at the time this suit was brought, he being an owner of an undivided two thirds interest in the tract of land in controversy, cannot be regarded as taking and holding possession under and by virtue of said mortgage. Affirmed. (Second assignment of error.)

3. The court is requested to instruct the jury what proportion or share the plaintiffs are entitled to under the evidence in the surface land, and what in coal; and what proportion or share in the fifty acres in question James Howell acquired and held by descent as one of the heirs of his father, Lewellen Howell, Sr.; and what, if any, under the will of his brother, Lewellen, Jr.

Point refused.

4. The evidence shows no purchase by Lewellen, Jr., of his brother James' share in his father, Lewellen, Sr.'s land, as alleged in plaintiffs' statement of title, and there is not sufficient

[Mellon *v.* Reed.]

evidence to show that Lewellen, Jr., gained title to Jame's share by adverse possession.

Answer of court:

Lewellen could not claim title as against James by adverse possession, for his possession from the date of partition to his death was not sufficient. But it is for he jury to say, under all the evidence, whether James' share in his father's estate was not settled or arranged with him before the partition of the land between his four brothers. (Third assignment of error.) The defendant also filed, *inter alia*, the following assignment of error:

The court erred in giving effect to the parol evidence of partition, and its effect on James' title derived from his father; and instructing the jury peremptorily in effect that James had parted with that title by some arrangement or other. (Eighteenth assignment of error.)

The court erred in not instructing the jury peremptorily under all the evidence in the case to find a verdict for the plaintiffs for two undivided third parts of the surface land, and one undivided ninth part of the coal in the same, on condition of paying to the defendants the mortgage judgment for $514.62 on the *sci. fa.*, 24, June Term, 1879, with interest thereon from October 17th, 1882. (Nineteenth assignment of error.)

The court submitted to the jury the question whether the land in dispute was the same that James Howell took as devisee of his brother Lewellen or whether he inherited it or any part thereof from his father, Lewellen, Sr.

The jury rendered the following verdict:

1. We find that the land in dispute is the same as James Howell took as devisee under the will of his brother, Lewellen Howell, Jr., and that he inherited no part thereof under the will of his father, Lewellen Howell, Sr.

2. We find for the plaintiffs the one undivided third interest in the property described in the writ in this case with six cents damages and costs; subject, however, to the payment by plaintiffs of the judgment for $514.62 on *sci. fa.*, No. 24, June Term, 1879, with interest thereon from October 17th, 1882, the date of said judgment.

Judgment was entered upon the verdict whereupon the defendants took this writ and assigned for error *inter alia*, the overruling of their offer of evidence and the answer of the court to the plaintiffs' points as shown above.

*Thomas Mellon* and *J. McF. Carpenter (James S. Strickler* with them) for plaintiffs in error.

*E. P. Douglass (R. E. Stewart* with him) for defendants in error.

Mr. Justice CLARK delivered the opinion of the court February 7th, 1887.

It is conceded that the land in dispute is part of a larger tract, of which Lewellen Howell, Sr., in the year 1823, died sole seized; both parties claim title mediately or immediately from him. By his last will and testament he devised the land to the use of his wife, Mary, until James his youngest son should arrive at the age of twenty-one years, at which time he directed his executors to sell it and divide the proceeds, one third to be at interest for the use of his wife, and the remaining two thirds to be equally divided amongst his heirs, consisting of five sons and three daughters. The provision for his children was a bequest of the proceeds of the sale of the land by his executors, and not a devise of the land itself, but it was the right of the parties interested in the fund at their election to accept the land unconverted, and this, it is not denied, was done, and thereby they become tenants in common of the lands, subject to the estate and right of the widow therein.

The widow was without condition entitled to the whole of the land during the minority of her son James, and after that, at her option, upon certain conditions, during widowhood, at, or at any time after, the arrival at age of James Howell, it was undoubtedly competent for the heirs, with the widow's consent, to make a partition of the lands according to the respective rights of the parties in interest under the will. It was in the power of any of the parties under such circumstances, by an application to the Orphans' Court, to have compelled a partition, and what was compellable by law might be effected by the agreement of the parties, and without recourse to the law. Nor was it essential that the partition should be evidenced by deed or even by writing. A partition which merely severs the relation existing between tenants in common in the undivided whole, and vests title to a correspondent part in severalty, is not such a sale or transfer of title as will be affected by the Statute of Frauds; and, in analogy to the proceedings, both in the Common Pleas and Orphans' Court, it is not necessary that a certain portion or allotment of the land, in kind, should be given to each of the tenants in severalty, if it appears that the partition is fully executed, and that each has accepted and received his purpart, either in kind, or by payment in money, or otherwise: Calhoun v. Hays, 8 W. & S., 132.

But it is not shown in the case at bar that James Howell took any part in the partition; indeed it does not certainly appear that he had arrived at the age of twenty-one, and was *sui juris;* it does appear that he was present, but no provision is shown to have been made for him; he received no purpart

of the land, no equivalent in money, or otherwise. Even in the ordinary proceedings for partition under the statute, after confirmation by the court and allotment of the several pur-parts, the title of the several tenants in common remains, until their respective interests are properly secured: Bavington *v.* Clark, 2 P. & W., 115. How then could James Howell be supposed to have parted with his title to the undivided one eighth part of the land, as one of the heirs of Lewellen Howell, Sr., deceased, when he neither received any part of the estate nor the promise of anything in lieu of it. It is true there is no proof that James, during the lifetime of his mother, made any claim to the land, but it is equally true, that during the life of his mother he had no claim which he could make, and within three years after her death he brought his ejectment against John for his interest in the part of which Lewellen, Jr., died seized. His interest in this part of the tract was different from his interest in the other part, for Lewellen, the younger, had in the meantime died, and by his will devised to James an interest in the former, which Lewellen, Jr., doubtless claimed as his own under the partition. The ejectment by James and Andrew, jointly to recover what interest either of them might have in this part of the land, was in no sense inconsistent with a claim by either of them in the other part. As to James' interest in his father's estate the partition was as if it had never been made; James was therefore entitled to one eighth of the entire tract.

Lewellen, Jr., however, as, between himself and those by whom the partition was in fact made, was bound by it, and the devise by Lewellen to James and Andrew for life was made of this part of the land upon that condition of the title. But if James claimed the undivided one eighth of the whole tract, as his agreement with his attorneys, Robert Wood & Son, plainly indicated that he did, his claim under Lewellen's will, in that part of the land, would necessarily be for such part thereof only as was proportionate to Lewellen's one eighth part of the whole; for he would not be permitted to repudiate the effect of the partition in the one case to avail himself of the benefit of it in the other; if this could be done he would recover more than his share of the land. In the absence then of any evidence which could bind James to the partition, it follows, as a matter of law, that he was entitled to one eighth interest in his father's tract absolutely, and the equivalent of one half of one eighth of the whole, in the Lewellen tract for life, and this, within a very small fraction of an acre, was the amount of land which was conceded to him, the amount which he actually recovered, and which was set apart to him in severalty, in the ejectment—the lands now in dispute.

[Mellon *v.* Reed.]

It may be that those entitled in remainder under the will of Lewellen the younger were not concluded by the act of the life tenant, and were therefore not bound by the judgment in ejectment, but they have by the most unequivocal acts accepted it, and this suit is brought in plain recognition of it.

It is of little consequence that the land was, in the precipe, described or distinguished as the same land of which Lewellen, Jr., died seized; he was in the sole possession at the time of his death, and was, in fact, seized of an undivided interest therein. It is true also that by the verdict he was held for payment of the legacies declared in Lewellen's will, but he was also obliged to release all his interest in the remainder of the original tract, owned by his father.

There was no evidence whatever, prior to the filing of the formal release under the verdict, of any extinguishment of James' title in his father's farm, or to justify the submission of the question whether or not the land in dispute is the same as James Howell took under the will of his brother, Lewellen Howell, Jr., deceased. The effect which was given to the oral partition, as against James Howell, was the fundamental error of the court below in the trial of the cause, and upon this the judgment must be reversed.

The remaining assignments relate chiefly to mistaken statements of fact, bearing upon the question submitted. In the view we have taken of the case, these become unimportant, and need not be considered at length. The first and second assignments of error are, we think, without merit. The testimony of Peter Murray was irrelevant and was properly excluded.

Where the owner of a mortgage, or an undivided interest in land, is at the same time the owner in fee of another undivided interest, in the same land, we think a possession of the land, wholly consistent with his right as a tenant in common, cannot in an ejectment be considered the possession of a mortgagee, unless the fact be shown that the possession had been previously acquired, and was afterwards retained, as such. Besides, it is said that the mortgage was in the name of Thomas A. Mellon, who is not a party to this suit; as the instrument is not printed, and we find no evidence in relation to it, we are unable to see how the question, supposed to be raised under the second assignment, has any connection with the cause.

The judgment is reversed, and a *venire facias de novo* awarded.