Raymond **ANDERSON** and Hattie Anderson, husband and wife, Appellants,

v.

Elsie **ANDERSON**, Appellee.

No. 46247.

Court of Appeals of Oklahoma, Division 2.

March 19, 1974.

Released for Publication by Order of Court of Appeals April 11, 1974.

Donald M. Stevenson, Idabel, for appellants.

Carl E. LeForce, Idabel, for appellee.

BRIGHTMIRE, Presiding Judge.

The year was 1957. Fall was setting in and plans for a new state highway through McCurtain County, Oklahoma, were taking shape. Raymond Anderson, an employee of the state, asked his son, W. D. Anderson, to join him in buying 160 acres of land lying about 20 miles north of Broken Bow—land that eventually would become the subject of this quiet title action between a man and his onetime daughter-in-law. The bank loaned them the money and they bought the land May 23, 1957, for about $9 an acre. Not long after that, the state condemned land running through the quarter section for the construction of State Highway 259, so on February 14, 1958, Raymond Anderson and his son conveyed the necessary right-of-way to the state of Oklahoma for an agreed price of $26 an acre.

Through the years Raymond Anderson occupied the north 80 acres (tract No. 1) and his son and daughter-in-law, Elsie, occupied the south 80 (consisting of two designed tracts called No. 2 and No. 3).

About the middle of 1971 Elsie sued W. D. for a divorce and was awarded one along with tract No. 2—the south 40 acres of the south 80. On January 19, 1972, Raymond and his wife Hattie instituted this action against, among others, his son W. D. and Elsie to quiet what he claimed to be his title to all of tract No. 1 and to an undivided one-half interest in tracts No. 2 and No. 3. He further asked the court to declare W. D. owner of the other half of tract No. 3 and Elsie owner of the remaining half of tract No. 2.

Elsie answered denying the latter and by cross-petition demanded she be declared sole owner of tract No. 2. She was and the parents of her former husband appeal saying the adjudication is wrong because (1) there was not enough evidence to allow a finding Elsie and W. D. had perfected a title by adverse possession; (2) nor was *there sufficient evidence upon which to* rest a finding that the south 80 had been earlier conveyed to Elsie and her former spouse by means of a deed later lost; (3) Raymond Anderson and his son neither agreed to nor did they voluntarily partition the land in kind between them; and (4) the "defense of res judicata" based on the land division in the divorce suit is not available to Elsie in this case.

■ Without going into detail we agree with all of the points raised by appellants save one, the third contention pertaining to a voluntary executed parol partition. Briefly with regard to the first point it is undisputed that the period of alleged adverse possession fell short of the required 15 years. As to the second proposition the lost deed doctrine cannot be invoked unless proof there be that a deed once existed which could be lost—proof missing here. The fourth contention is based upon a de-

fense which is neither properly pleaded nor proved. While the parties refer to the divorce proceeding and the trial court evidently took "judicial notice" of it we have no way of doing so because such record is not included in the one we have, so that we do not know who all the parties were or exactly what was decided.

■ With this said we move on to appellants' third proposition—the one that cannot be sustained by reason of which the trial court judgment must be upheld insofar as it determines that appellants do not own an undivided one-half interest in the south half of the south 80.

In our opinion both the facts and law support the trial court's finding that not long after Raymond Anderson and his son W. D. took title to the 160 acre tract in suit, they orally agreed upon a "voluntary partition" of it in kind thus: Raymond Anderson was to receive from his son one-half undivided interest in the north 80 acres (tract No. 1) and W. D. Anderson was to receive his father's half interest in the south 80 (tracts No. 2 and No. 3). Pursuant to this oral agreement W. D. and Elsie Anderson executed a warranty deed to Raymond and his wife on September 27, 1961, conveying all their right, title and interest in and to tract No. 1.

As a matter of fact appellants in their argument concede the agreement to so divide the land but add: ". . . this agreement was contingent upon each to pay their equal share of the cost of the real property." They then refer to Raymond Anderson's testimony to the effect he paid the entire purchase price and his son has never paid any of it. This evidence if taken to be true at most merely created a debt the recoverability of which 14 years later we need not decide.

In further argument against the parol partition appellants seek solace in the statute of frauds, 15 O.S.1971 § 136, which invalidates an oral agreement "for the sale of real property, or of an interest therein." They say that because "there was no writ-ten agreement for partition and certainly no exchange of deeds" the alleged oral transfer ran afoul of the statute of frauds and was therefore void.

Our rejection of this contention stems from a review of certain relevant basic principles of law. Though not previously considered by an appellate court of this state, courts elsewhere in this country are divided on the question of whether an oral agreement to partition is rendered unenforceable by the statute of frauds. Much of the apparent conflict, to be sure, may be attributed to differing statutory language. Early English common law with all the technicalities a feudal system could bring to bear on its real property law, did permit tenants in common to orally partition their land before enactment of the statute of frauds by means of the ceremonial "livery of siesin." Docton v. Priest, 78 Eng.Rep. 354 (1588). And it appears coparsoners—akin to our present day joint tenants—could do likewise even without the livery routine. Dow v. Jewell, 18 N.H. 340, 45 Am.Dec. 371 (1846). After enacting the statute of frauds English and a number of American courts concluded that a parol partition came within the purview of variously worded frauds statutes.[1] Other tribunals, however, decided otherwise primarily on a theory more compatible with a realistic interpretation of our own statute—that an oral partition is not a sale of land within the intent and meaning of the frauds statute but simply an allocation by designation of a certain part of the commonly held land to each of the tenants in common. Jones v. Texas Co., 80 S.W.2d 761 (Tex.Civ.App.1935); McCauley v. Peoples, 4 Tenn.App. 448 (1927); Mellon v. Reed, 114 Pa. 647, 8 A. 227 (1886); Natchez v. Vandervelde, 31 Miss. 706, 66 Am.Dec. 581 (1856); Green v. Vardiman, Ind., 2 Blackf. 324 (1830). It is like the court said in Moore v. Kerr, 46 Ind. 468 (1874): "The distinction between the partition of lands among the owners thereof and a sale of lands is pretty clear. The

---

1. Gratz v. Gratz, 4 Rawle 411 (1834); Mc-Call v. Reybold, 1 Harr. 146 (1833); Lacy v. Overton, 9 Ky. 440, 2 AK Marsh. 440 (1820);

Johnson v. Wilson, Willes Rep. 248, 125 Eng. Rep. 1156 (1740).

statute of frauds relates to 'contracts for the sale of lands.' . . . The partition does not transfer the title of the parties so much as it assigns or apportions to each his share in severalty in the land." So also said the court in Meacham v. Meacham, 91 Tenn. 532, 19 S.W. 757 (1892) discussing a similarly worded frauds statute: "A partition is not a sale. It is a separation, between joint owners or tenants in common, of their respective interests in land . . . . Partition . . . has never been treated as a sale or involving any of the elements of a sale. . . . "

Our own law fits in well with the views expressed in the latter cases. In Oklahoma by express statute "All contracts may be oral, except such as are specially required by statute to be in writing." 15 O. S.1971 § 134. Section 136 cited earlier specifies that an agreement "for the sale of real property, or of an interest therein" shall be in writing. We hold that an agreement among tenants in common to partition their land is not one for the "sale" of real property or an interest therein and therefore need not be in writing.

■ But even if it were otherwise there has been sufficient partial performance of the oral agreement in question to place it outside the statute of frauds. Many decisions there are based on the doctrine of partial performance—a doctrine which for reasons of equity will remove a partially performed oral agreement to sell realty from the frauds statute when it appears to work a fraud not to do so. Kirkpatrick v. Jacobson's Lifetime Bldgs., Inc., Okl., 467 P.2d 489 (1970); Claiborne v. Claiborne, Okl., 467 P.2d 157 (1970); Kirby v. Agra Gin Co., Okl., 347 P.2d 223 (1959); Bahnsen v. Walker, 89 Okl. 143, 214 P. 732 (1923).

Years ago the court in Harris v. Arthur, 36 Okl. 33, 127 P. 695 (1912) held that the following acts taking place under a parol contract for sale of an interest in real property were most frequently considered as sufficient part performance to save it from the frauds statute: (a) delivery of possession to, or the assumption of exclusive and notorious possession by vendee with knowledge of vendor accompanied by a part payment of the purchase price; or (b) expenditure of money by vendee in making improvements permanently beneficial to the land with knowledge of vendor; or (c) where parties have so conducted themselves that to allow one party to take shelter under the statute would inflict an unjust and unconscionable injury or loss upon the other.

In the instant case appellant father admitted he and his son agreed to divide the land equally as mentioned earlier and that he went into exclusive possession of the north half while his son took sole possession of the south half. Each improved his own half, lived on it, and paid taxes on it for many years. The son and appellee actually executed a warranty deed conveying their interest in the north half to appellants, but for some reason undisclosed in the record a reciprocal deed was never executed by the father conveying his interest in the south half as Elsie said she understood was supposed to have been done.

While conceding the parol agreement to partition the 160 acres appellant father said his son had not paid him for half of it so he testified: "I claimed all of it until it was paid for." There appears to have been no note executed regarding the debt, no written security seems to exist, and while he says his son was to pay on "no certain date" he was to pay interest—"I would judge," said the father, "about four or four-and-a-half" percent—still appellants never sought to enforce payment of the debt or demand the land until right after appellee got divorced from their son. The debt, if such there was or is, will not now justify appellants' disavowal of the substantially executed parol partition.

Under these circumstances we hold it would be inequitable not to enforce the parol partition agreement. We affirm the judgment of the trial court insofar as it decrees appellants have no interest in the 40 acres claimed by appellee—the only complaint raised concerning it.

NEPTUNE and BACON, JJ., concur.