## John H. Byers, Appellant, *v.* Jacob Byers.

*Tenants in common—Parol partition—Partition by horizontal or vertical lines.*

A parol partition between tenants in common is valid and conclusive, and such partition may be by horizontal as well as by vertical lines.

*Tenants in common—Parol partition—Coal lands—Burden of proof.*

Where two tenants in common have made a parol partition of coal lands, and one claims that the partition included both surface and coal, and the other that it extended merely to the surface, the presumption is that it included the whole estate, and the burden of proof is upon the latter to show that the partition did not include the coal.

On action of partition for the coal in certain lands, it was admitted by both parties, who had been tenants in common, that there had been a parol partition in 1848, but the plaintiff claimed that it extended only to the surface, while the defendant claimed that it included both surface and coal. There was evidence that the plaintiff occasionally took coal after the partition. *Held,* (1) that the occasional taking of coal, even if only permissive, would not prevent the partition from being executed in the legal sense, including the coal as well as the surface ; (2) that, as the plaintiffs never had either adverse or exclusive possession of the coal, the statute of limitations had no bearing upon the case ; (3) that the jury should have been instructed that the parties had the right to make such partition as they chose, either of the whole land or of the surface only ; that the presumption was that they parted the whole, but that presumption would give way to the intention of the parties, and it was for the jury to determine from all the evidence what the parties intended to include in the partition and to find a verdict that would carry out that intention.

Argued Oct. 14, 1897. Appeal, No. 53, Oct. T., 1897, by plaintiff, from judgment of C. P. Westmoreland Co., November Term, 1895, No. 66, on verdict for defendant. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Common law action of partition. Before McCONNELL, J.

At the trial it appeared that both plaintiff and defendant were sons of John Boyer, deceased, but the family name during the lapse of years was changed from Boyer to Byers. Plaintiff claimed partition of the coal underlying a tract of land of which his father had died seized. The material portion of the will of John Boyer who died in 1835 was as follows :

" And as to my land in Mt. Pleasant township it is my will that the proceeds of the lands and the increase of stock be taken and applied to building a house and barn and still house on the old place, and rebuilding the barn where I live.   When finished it is my will *that the land be equally divided in quantity and quality, having due regard to the timber and the stonecoal, and limestone between my sons John H. Boyer and Jacob Boyer,* and I authorize my executors to make a deed of conveyance to each of my children for their land as soon as it conveniently can be done."

The evidence showed, and it was not denied, that in 1848 plaintiff and defendant made a parol partition, which plaintiff contended related to the surface of the land only, while defendant contended that it included both surface and coal.

The court charged in part as follows:

[Now, in the absence of either a written instrument making a severance of the coal from the surface, or in the absence of the acquisition of a title under the statute of limitations, I know of no way to acquire title to real estate of this kind by a parol partition.   Therefore, we say to you, that so far as this partition, or the allegation of the existence of a parol partition, that took place forty or fifty years ago is concerned, you must consider that as being a partition of a tract of land in its ordinary acceptation.   You must regard the thing, as we must assume the testator regarded it, as a unit, a thing to be divided.   There is no indication in the testator's will that there was any attempt on his part to sever the coal from the surface.   There is no indication, so far as I can see, from the testimony, of any attempt, by John H. and Jacob Byers, by any instrument in writing, to make out of that single estate two estates, so far as severing it horizontally is concerned.   Therefore, under what we have said to you, you are required to look at the evidence that has been produced here on the subject of this partition as bearing upon that tract of land as a unit, as one estate, and not as two separate and independent estates, one in the surface and one in the coal.] [1]

There has been a great deal of evidence introduced here in regard to the relative value of these two tracts of land.   That is a mere incident to the main inquiry that you have before you.

It may be possible that by reason of the increase of the va.ue of the coal from the time that this partition was made down to the present time, would make one side of that tract of land more valuable than the other, but that question is of no significance. We care nothing about that. This evidence was admitted for the purpose of showing what must have been obviously in the minds of these brothers when it is alleged they attempted to make partition of this land. The hills, the timber, the stonecoal, the limestone, the streams, the natural configuration of the land, its exposure to the winter winds, the natural quality of the soil; all these things were presumably in existence at the time when this alleged partition took place, and presumably were in the contemplation of the parties at that time.

You will recall that the death of the testator, as testified to by one of the defendant's witnesses and perhaps the plaintiff's also, was on November 27, 1835. His will was dated on October 25, 1835, and probated on January 6, 1838. Jacob Byers gives his version of the facts in this case; he says that he and John lived together until 1843; that the attempted division of the real estate was in 1848; that at his father's death he was seventeen, and his brother twenty-one or twenty-two; that he himself was married in 1842; that the coal was not opened at the time of this attempted division; that is, not opened at the coal mine, as it is now; that they took coal out of the bottom of the run, and that in 1854 he and John opened the present coal bank; and that in 1857 the spring was taken, and so on.

Now, then, there is a claim, however, on John H. Byers' part that he has always had the right of taking out coal. Now, if this partition that I have spoken of took place, and it was the intention of the parties that it should be a complete severance indefinitely downward, so that the coal, like every other part of it would fall as the surface fell, and that dividing line was lived up to, then John H. cannot take back a thing out of that partition, a thing that was a constituent element in it. It is either a partition or it is not a partition. If it was a partition, everything that was parted must remain parted so far as effectiveness of that proceeding is concerned. It is like an "exchange" of lands about which we will not bother; there is an implied warranty in every common law partition, that is, as long as the parties to that partition own their respective parts there is an implied

warranty of the one to the other. When the title of one of them fails, the title of the other fails with it as long as the parties are in possession of what they parted themselves. There is that warranty, so that if this seam of coal was in the land, and there had been no severance, and was part of the land, if you find a partition took place, John H. Byers cannot withdraw from that partition this seam of coal, and then claim that the partition exists as to the residue. [If that partition stands, it must stand on both legs. If its one leg is taken away it must fall. This is either a partition or it is not. And we have said to you that independent of a writing severing that which was one estate, and making it two estates horizontally, and independent of the statute of limitations, you must consider that as a unit, and if John H. Byers exercised the rights of taking coal, you must look on that as affecting the question whether or not a partition of that unit took place or not.] [2]

Now, then, what was the condition of things at that time? In 1848, was this coal mine as it now exists opened? Was the coal considered of any particular value at that time? Look at it as it looked to them at that time. Before 1848 and down until 1854, what evidence has been introduced here to show you the rights of John H. Byers in regard to taking coal? What did he do at that time independent of what is now said? After looking at all these things that were done at that time, as bearing upon this question, you will then look at the declaration of the parties in regard to it. There has been evidence introduced on that subject. John H. Byers has given his version of his claim, and Jacob has given his version. There have been witnesses called here who testified in some particulars in contradiction of these respective witnesses in that regard. All these declarations you are to consider in disposing of this question. The kind of testimony that is the most material is of the things done at the time. The most honest men in thinking about matters that transpired in the past often become confused about what the exact fact was then in comparing it with the state of affairs now. What was said and done then? If a partition took place, we do not regard it as being made out in the same way that a parol sale of land has to be made out in order to guard against the provisions of the statute of frauds. The same degree of accuracy is not essential as would be essential there.

If a partition took place, and the parties receded from that partition line, that was a confession, a mutual confession of being ousted from his former cotenant's side of the line, and the titles of the parties commenced then, if the division was made pursu·ant to the contract. All these things in regard to what they did afterwards, how they did it, all bear on the question of how they understood it, whether or not there was a partition at that time.

Now, then this much in regard to partition. [Then the next question would be in regard to whether or not there can be an acquisition to the title to the land, assuming that a partition was made which affected the coal, and that the partition of the coal on Jacob's side went with the surface land on that side to Jacob, let us next look at the question of whether or not the acts that have been detailed in the witnesses' testimony here would allow John H. to acquire title under the statute of limitations to this coal mine that Jacob says was opened in 1854.] [7]

[If you find that there was no partition at all, and that this land remained undivided as it came to them from the will of John Boyer, then there could be a recovery of the undivided one half interest in the subject-matter of this suit. If you find that there was a partition, and that John H. has not acquired title under the statute of limitations, then you would find that they do not hold together and undivided the property described in the statement of claim.] [3] If you find that John H. acquired title under the statute of limitations for an undivided one half interest in the subject-matter of the suit, then your verdict would be that they do hold together and undivided the property described in the statement of claim, and that John holds one undivided half thereof.

Plaintiff's points and the answers thereto among others were as follows:

3. The plaintiff and defendant, being tenants in common of both surface and coal, could, if they chose, make a good parol partition of the surface alone, or the coal alone, or of both together. But the defendant, who sets up such a partition of the coal against the written recorded title, must take the burden of proving clearly, not only that they made a partition of the surface, but that it was intended to embrace, and actually did

embrace, the underlying coal as well. *Answer:* That is refused. [4]

5. The undisputed testimony in this case is that the parties many years ago agreed that the surface should be occupied and used separately, up to a line which was marked on the ground. That since that each has possessed and occupied the surface on his side of that line to the exclusion of the other; each has taken the proceeds of his own side, paid the taxes thereon, and made valuable improvements. Whether this was intended at the time as a final division or not is immaterial. Under our law these facts work a severance of the estate in common, and each can now hold the surface in severalty, and therefore it was properly left out of this case. *Answer:* The recital of the testimony here does not establish the proposition on which that is predicated, as I recall the testimony, and the point is refused. There is no evidence, as I have already explained to you, sufficient to show a severance at that time, such as would make that, instead of one estate, two estates [5]

6. As to the coal, however, we have a different state of facts. In so far as this coal was susceptible of actual physical possession, the undisputed testimony is that there never was any change in the possession, but that both continued to possess and to use the coal after the alleged partition just as they had done before it. True, the defendant claims that prior to 1857, this possession by the plaintiff was permissive, while since that time it has been against his will and protest. But neither the defendant, nor any other witness testifies that there was ever an exclusive possession of the coal by Jacob Byers. We therefore instruct you that there never was a fully executed partition of the coal, and the plaintiff must recover on his written title. *Answer:* That is refused for the reasons given in the general charge. [6]

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (1–7) above instructions, quoting them.

*John B. Head*, with him *James S. Moorhead*, for appellant.—
The plaintiff and defendant being tenants in common in the joint possession of the surface land, and in the joint possession, physical, visible and actual, of the underlying coal,

which was open, had full power and a perfect right to make, if they chose to do so, a good parol partition of the surface land only, allowing the coal to remain in common as before: McConnell v. Carey, 48 Pa. 350; 3 Leading Cases in the Am. Law of Real Prop. 128; Ebert v. Wood, 1 Binney, 216 ; Rider v. Maul, 46 Pa. 376; McKnight v. Bell, 135 Pa. 371; 17 Am. & Eng. Ency. of Law, 668; Snively v. Luce, 1 Watts, 69; Gratz v. Gratz, 4 Rawle, 433.

*D. S. Atkinson*, with him *John M. Peoples* and *W. S. Byers*, for appellee.—The partition was complete as to the whole land: Calhoun v. Hays, 8 Watts & Sergeant, 132; Rider v. Maul, 46 Pa. 380 ; Susquehanna, etc., Coal Co. v. Quick, 61 Pa. 328; Hawk v. Senseman, 6 Sergeant & Rawle, 22; Breneman v. Shroder, 21 Pa. 228; DeHaven v. Landell, 31 Pa. 126 ; Wright v. Guier, 9 Watts, 172 ; Sorber v. Willing, 10 Watts, 141; Adams v. Robinson, 6 Pa. 271; Christy's App., 110 Pa. 538.

The possession which holds the right of entry must not only be notorious, but adverse, hostile and exclusive, as against the owner. There must be an ouster by unequivocal acts where there has been privity of title and possession; such an act as shows that the occupant claims in his own right, and does not acknowledge the right of the other: Long v. Mast, 11 Pa. 189; Bannon v. Brandon, 34 Pa. 263; Lodge v. Patterson, 3 Watts, 74; Peck v. Ward, 18 Pa. 506; Sorber v. Willing, 10 Watts, 141; Martin v. Jackson, 27 Pa. 510; 15 Am. & Eng. Ency. of Law, sec. 2, p. 506; Tiedeman on Real Property, sec. 2.

OPINION BY Mr. JUSTICE MITCHELL, January 3, 1898:

The parties derived title in common, under the will of their father, in 1835. In 1895 appellant brought this action for partition of the coal only, thereby admitting that the surface of the land was held in severalty; the appellee defended on a parol partition claimed to have been made in 1848. Both parties therefore agreed that there was a partition, and as it was admitted that there had never been any deed between them, the partition necessarily rested in parol. Appellant however claimed that what was done in 1848 was a temporary division of the surface for convenience of working only, which did not include the coal, and which was incomplete, but ripened into title in sever-

alty as to the surface by the long continued separate possession
of the purparts taken under it. Appellee on the other hand
contended that it was a complete and executed partition from
its date, and included the coal as well as the surface. The dif-
ference as to how the partition of the surface became effective,
whether by virtue of the agreement itself, or only by the subse-
quent several possession is not material, and the only substan-
tial question in controversy was what the partition included,
the whole land, or the surface only. The learned judge below
charged the jury that there could be no parol severance of the
estate in the coal from the estate in the surface, and therefore
if they found there had been a partition at all, it was a partition
of the whole, or to use his very graphic expression, if the jury
found that there was a parol partition, " the cleaver of the law
severed the ownership from the surface clear down to the cen-
tre of the earth." This was practically a direction to find for
the defendant, and all the assignments of error, though taken
to different parts of the charge, and in varied phrase, are based
upon this ruling of the court. We are of opinion that it was
error. It was settled as early as Ebert v. Wood, 1 Binn. 216,
that a parol partition between tenants in common is valid and
conclusive. Chief Justice TILGHMAN puts the decision mainly
on the ground of part performance, which the English courts of
equity had held to take such contracts out of the bar of the
statute of frauds. But another and equally weighty reason
might be added from the nature of tenancy in common. As
each tenant has not only title, but joint and several possession
of the whole and of every part, the change to a title in severalty
in any specified part is not such a transfer of title to land as is
within the mischief contemplated by the statute of frauds. This
reason was indicated in Mellon v. Reed, 114 Pa. 647, and again
more fully in McKnight v. Bell, 135 Pa. 358, where it is said
by our late Brother CLARK, " a partition which merely severs
the relation existing between tenants in common in the undi-
vided whole and vests title to a correspondent part in severalty
is not such a sale or transfer of title as will be affected by the
statute of frauds. The reason of this rule rests in this : that
the partition is not an acquisition or purchase of land, nor is it
in any proper sense a transfer of the title to land; it is a mere
setting apart in severalty of the same interest held in common,

not in other, but in the same lands." The cases have drawn
the line between a mere parol agreement to part, and an agree-
ment followed by acts of the parties on the land itself, indicat-
ing several possession taken in execution of the agreement.
The former is inoperative but the latter is valid.

The right of partition by the parties is an incident of owner-
ship and, like the right of an owner in severalty to alien, is only
limited by such restraints as the law has put upon it in regard
to personal capacity and mode of conveyance. The statute of
frauds requires ordinary conveyances of land to be in writ-
ing, but as we have already seen the statute does not apply
to executed partitions between tenants in common. They are
therefore free, and as they rest solely on the agreements and
intentions of the owners, we see no room for distinctions in
regard to the methods of partition, whether by vertical or by
horizontal lines. There is no difference in the right, nor in any
other respect except in facility of proof of the intent, inasmuch as
the ordinary mode is by vertical lines, and therefore such parti-
tion is more readily presumed, and acts done in pursuance of it on
the surface are more easily shown. Horizontal divisions of land
as such are comparatively rare, but they are well established,
and may be made in the same way and subject to the same
rules as any other mode, if the parties so agree. Their modern
development, especially in this state, may well account for the
absence of cases in our reports, but the principles on which such
questions are to be decided do not admit of doubt. They are
illustrated by the case of Caldwell v. Copeland, 37 Pa. 427,
where, although the court is treating of a conveyance by deed,
it said, "there is no more reason why mines in another's land
whether opened or unopened may not be held by a deed . . . .
than why land in its most ordinary signification may not be so
held. In other words mines are land, and subject to the same
laws of possession and conveyance." And the analogous right
of severance of the strata of land horizontally by the individual
owner by acts as well as by deed is established in Delaware &
Hudson Canal Co. v. Hughes, ante, p. 66, opinion filed since
this case was argued.

There was no objection to the plaintiff proving if he could
that the partition was limited to the surface, and that the coal
was left in common. The parties might make partition of all

their land or of any part of it, and in any manner they chose to agree upon. In Coleman v. Coleman, 19 Pa. 100, the parties made partition of their land in 1787, excepting out of it the Cornwall ore banks, which they agreed should remain in common. This Court held not only that the partition was valid but that the retention of the ore banks in common was part of the consideration for the purparts in severalty, and therefore could not be subject to a new partition.

The ordinary mode of partition being of the whole land by vertical lines, and it being admitted that a partition had been made, the burden was upon the plaintiff to show that it was limited to the surface. In plaintiff's sixth point he asked the court to say that his continuing to take coal after the partition, even if only permissive, showed that there never was a fully executed partition of the coal, and plaintiff therefore must recover on his written title. This point however could not have been affirmed. The execution of a parol partition which is required by the cases means such acts of the parties upon the land as show a part performance of the agreement, sufficient, as suggested by Chief Justice TILGHMAN, supra, to bring it within the equity of enforcement. The presumption from the conceded fact of partition was that it included the coal as well as the surface, that being the usual method. On the question whether it did or not the plaintiff was entitled to go to the jury, but he had the burden of proof. An occasional use, such as was shown here, if the jury should find it to be permissive only, and not in the exercise of a right, would not prevent the partition from being executed in the legal sense, and including the coal as well as the surface. It was evidence of a claim of right, but not conclusive either of such right or of the failure to execute the partition.

The will of John Boyer had no bearing on the case except as showing that he had in his mind the timber, coal and limestone on the tract as distinct elements to be considered in the equal division which he directed. But his devise was of the fee in common, and his devisees could divide in any way they pleased.

Nor had the statute of limitations any bearing on the case. The plaintiff clearly never had any possession of the coal which was either adverse or exclusive, and the surface as already said, was admitted by both parties to be held in severalty. There was

no dispute as to the parol partition, and the only contested issue was what it included. The jury should have been instructed that the parties had the right to make such partition as they chose, either of the whole land or of the surface only, that the presumption was that they parted the whole, but that presumption would give way to the intention of the parties, and it was for the jury to determine from all the evidence what the parties intended to include in the partition, and to find a verdict that would carry out that intention.

Judgment reversed and venire de novo awarded.