J-S52004-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| VERNA MOLEK, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| FRANK MOLEK, | |
| Appellee | No. 1044 WDA 2014 |

Appeal from the Judgment Entered on August 19, 2014
in the Court of Common Pleas of Washington County
Civil Division at No(s): 2009-5216

BEFORE:  SHOGAN, OLSON, and WECHT, JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED NOVEMBER 20, 2015**

Appellant, Verna Molek ("Verna"), appeals from the judgment entered in favor of her brother, Frank Molek ("Frank"), following the denial of her exceptions to the Master's report and recommendation in her consolidated partition and detrimental reliance-based actions.[1]  Upon review, we affirm in part, and we reverse and remand in part.

_____

[1]  In Verna's notice of appeal, she indicated that this appeal was from the June 4, 2014 order denying her exceptions.  On August 8, 2014, we issued a rule to show cause why this appeal should not be dismissed as interlocutory because judgment had not been entered.  After receiving a timely response and supporting documentation indicating that judgment had been entered, we discharged the rule on August 27, 2014.  Consequently, we will treat this appeal as if it was filed after the entry of judgment on August 19, 2014, which is the appealable order.  **See** Pa.R.A.P. 905(a) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day

*(Footnote Continued Next Page)*

The trial court summarized the facts and procedural history of this case as follows:

By deed dated February 5, 1976, and recorded in the Recorder of Deeds Office of Washington County, Pennsylvania, in Deed Book Volume 1649, page 298, Mike Molek, the father to the parties of the instant action, deeded a tract of real property situated in West Pike Township, Washington County, Pennsylvania, consisting of 20.41 acres (hereinafter "Original Tract") to [Verna] . . . , her brother, [Frank] . . ., and Joseph Molek, the brother to the parties of this action (hereinafter "Joseph Molek"), as joint tenants with rights of survivorship.

Mike Molek died intestate on August 28, 1984. [Frank] testified that his father had informed him that there was money stored in the basement wall of the farm house. [Frank] extracted the money, which totaled approximately $40,000 cash. Thereafter, Joseph Molek, [Verna], and [Frank] met to discuss their father's finances. At the meeting, the three family members divided the cash into 14 shares, in order to bestow each of their siblings with approximately two thousand dollars each. Joseph Molek and [Frank] expressed that they were not interested in living at the farm house, so it was further agreed that [Verna] could move into the farm house. [Verna] was given an additional sum of $10,000 from the cash found in the farm house in order to make repairs to the house. Testimony demonstrated that no decisions were made regarding the Original Tract at that time.

On September 7, 1984, due to an impending divorce, Joseph Molek deeded his interest in the Original Tract to [Verna] and [Frank], as joint tenants with right of survivorship.

Thereafter, [Frank] discussed with [Verna] his interest in building a house on the Original Tract. By deed dated June 15, 1987, and recorded with the Recorder of Deeds Office of Washington County, Pennsylvania in deed book volume 2286, page 430, [Verna] conveyed her interest in a portion of the

_(Footnote Continued)_ ———————

thereof."); ***Sagamore Estates Property Owners Ass'n v. Sklar***, 81 A.3d 981, 983 n.3 (Pa. Super. 2013).

Original Tract, consisting of approximately 4.895 acres, to [Frank] and his wife, Bonnie Molek, as tenants by the entireties.

After his divorce proceedings concluded, Joseph Molek inquired with [Verna] and [Frank] about putting his name back on the deed to the Original Tract. However, as an alternative, [Verna] and [Frank] agreed to convey their interest to 5 acres of the Original Tract to Joseph Molek on June 26, 1990. Accordingly, [Verna] and [Frank] owned, as joint tenants with rights of survivorship, the remainder of the Original Tract which consisted of approximately 10.515 acres (hereinafter referred to as "Property").

[Verna] testified at the proceedings before the Master that she was under the belief that she solely owned the farm house and that the parties agreed to divide the Original Tract evenly into 7 acre allotments. To support this claim, [Verna] testified that she paid all of the house bills, taxes, mortgage payments and upkeep totaling approximately $128,000. She further testified that she paid [Frank] for supplies and labor for any maintenance he completed at the farm house.

Conversely, [Frank] testified that there was no agreement to divide the property as [Verna] proposed and any payments made to him by [Verna] were for reimbursement of supplies only. However, [Frank] did concede that he did not pay any taxes or mortgage payments for the farm house.

Following the completion of the agreement to deed acreage to Joseph Molek in 1990, [Verna] requested that [Frank] remove his name from the deed to the remaining Property including the farm house. [Frank] declined [Verna's] request on numerous occasions. Thereafter, [Verna] filed this Complaint seeking partition of [P]roperty.

Trial Court Opinion, 3/17/15, at 3–5 (footnotes omitted).

On or about June 23, 2009, [Verna] . . . filed a civil action seeking partition of a certain 10 acre parcel of property located in West Pike Township, Washington County, Pennsylvania. The Complaint alleged that [Frank] . . ., [Verna's] brother and the joint owner, had made an agreement for the partition of the property and/or that a "parol partition" of the property had occurred. On May 11, 2012, [Verna] filed a separate civil action

- 3 -

alleging that [she] relied on the alleged agreement with [Frank] for partition of the property to her detriment.

On or about September 6, 2012, in consideration of [Verna's] Motion, William H. Knestrick, Esquire, was appointed as Master in Partition to the instant matter. It was further ordered that cases 2009-5216 and 2012-3032 be consolidated under case number 2009-5216.

On April 10, 2013, a hearing was held before court appointed Master William H. Knestrick, Esquire (hereinafter the "Master"). The Master entered a Master's Report and Recommended Order on June 17, 2013. Notably, the report found that the 10.515 acre tract should be divided according to the appraisal conducted by C. Roberta Aul, certified appraiser, valuing the farm house and approximately 1.4 acres at $75,000 and the remaining 9.115 acres at $75,000. On June 27, 2013, [Verna] filed timely Exceptions to the Master's Report. Thereafter, on May 29, 2014, argument was held on [Verna's] Exceptions. The Trial Court entered an Order on June 4, 2014, denying [Verna's] Exceptions and approving the Master's Recommended Order.

*Id.* at 1–2. This timely appeal followed. Verna and the trial court have complied with Pa.R.A.P. 1925.

Verna presents the following questions for our consideration:

1. Did the trial court [err] in concluding that there was insufficient evidence to establish that a parol partition of the original tract of 20.41 acres occurred or alternatively, that there was insufficient evidence to establish that a parol partition of the current tract consisting of 10.515 acres occurred?

2. Alternatively, to the extent that the trial court's conclusion that no parol partition occurred is affirmed, did the trial court [err] as a matter of law by adopting and approving the Master in Partition's analysis in support of partition and/or in concluding there existed sufficient evidence for the Master's recommended order of partition of the current tract of 10.515 acres that was approved?

- 4 -

3.    Did the trial court [err] by not ruling upon the Appellant's detrimental reliance claims set forth in the Complaint in Civil Action at Washington County Civil Action Number 2012-3032 and consolidated with the Complaint in Partition filed at Washington County Civil Action Number 2009-5216?

Verna's Brief at 4.

> The scope of appellate review of a decree in equity is particularly limited and such a decree will not be disturbed unless it is unsupported by the evidence or demonstrably capricious....  The test is not whether we would have reached the same result on the evidence presented, but whether the judge's conclusion can be reasonably drawn from the evidence....  Where a reading of the record reasonably can be said to reflect the conclusions reached by the lower court sitting in equity, we cannot substitute our judgment for that of the lower court.

*Lombardo v. DeMarco*, 504 A.2d 1256, 1258 (Pa. Super. 1985); *In re Kasych*, 614 A.2d 324 (Pa. Super. 1992); *Moore v. Miller*, 910 A.2d 704 (Pa. Super. 2006).  "Conclusions of law or fact, being derived from nothing more than the chancellor's reasoning from underlying facts and not involving a determination of credibility of witnesses, are reviewable."  *In re Kasych*, 614 A.2d at 326 (citation omitted).

Verna first argues that the Master erred in determining there was insufficient evidence to support a finding that she and her brothers effectuated a parol partition of the Original Tract.  According to Verna, "the deeds granting to Frank and Joseph tracts out of the [O]riginal [T]ract and their subsequent occupation of those tracts reveal evidence of the execution of the parol partition agreement."  Verna's Brief at 19.  In response, Frank

contends that there was no evidence of a parol partition of the Original Tract and that he and Verna "acted until 2009 like the joint tenants that they were and not as complete owners over a 'purpart'."[2] Frank's Brief at unnumbered 3, 7.

> Partition is a possessory action; its purpose and effect being to give to each of a number of joint owners the possession [to which] he is entitled ... of his share in severalty. It is an adversary action and its proceedings are compulsory. The rule is that the right to partition is an incident of a tenancy in common, and an absolute right.

*Lombardo*, 504 A.2d at 1258; *Bernstein v. Sherman*, 902 A.2d 1276, 1278 (Pa. Super. 2006).

More than a century ago, the Pennsylvania Supreme Court explained the law of parol partition as follows:

> It was settled as early as *Ebert v. Wood*, 1 Bin. 216, that a parol partition between tenants in common is valid and conclusive. Chief Justice Tilghman puts the decision mainly on the ground of part performance, which the English courts of equity had held to take such contracts out of the bar of the statute of frauds. But another and equally weighty reason might be added from the nature of tenancy in common. As each tenant has not only title, but joint and several possession of the whole and of every part, the change to a title in severalty in any specified part is not such a transfer of title to land as is within the mischief contemplated by the statute of frauds. This reason was indicated in *Mellon v. Reed*, 114 Pa. St. 647, 8 Atl. 227, and again more fully in *McKnight v. Bell*, 135 Pa. St. 358, 19 Atl. 1036, where it is said by our late Brother Clark: "A partition

---

[2] A "purpart" is "[a] share of an estate formerly held in common; a part in a division; an allotment from an estate to a coparcener." BLACK'S LAW DICTIONARY at 1355 (9th Ed. 2009).

which merely severs the relation existing between tenants in common in the undivided whole, and vests title to a correspondent part in severalty, is not such a sale or transfer of title as will be affected by the statute of frauds. The reason of this rule rests in this: That the partition is not an acquisition or purchase of land, nor is it in any proper sense a transfer of the title to land. It is a mere setting apart in severalty of the same interest held in common, not in other, but in the same, lands."

**Byers v. Byers**, 38 A. 1027, 1028 (Pa. 1898); **Merritt v. Whitlock**, 49 A. 786, 786–788 (Pa. 1901). **See also Runco v. Ostroski**, 65 A.2d 399 (Pa. 1949) (acknowledging a tenancy by entireties in real estate may be ended by parol partition; citing **Merritt**).

However, "[t]he cases have drawn the line between a mere parol agreement to partition and an agreement followed by acts of the parties on the land itself, indicating several possession taken in execution of the agreement. The former is inoperative, but the latter is valid." **Byers**, 38 A. at 1028. "The execution of a parol partition, which is required by the cases, means such acts of the parties upon the land as show a part performance of the agreement, sufficient . . . to bring it within the equity of enforcement." **Id.** In short, an agreement to partition and execution of that agreement must be demonstrated by all parties acting in a manner that recognizes each party's individual, exclusive possession of their purpart.

Here, the trial court concluded there was insufficient evidence of an agreement regarding partition of the Original Tract:

It is apparent that [Verna] made an agreement with [Frank] and Joseph Molek to survey and subdivide tracts of land from the Original Tract for their benefit, terminating the joint

tenancy as to those out parcels. Unfortunately for [Verna], what it [sic] is equally clear from the record is that [Frank] and Joseph Molek made no such agreement for a subdivision of the [10.515 acres] for [Verna]. The record demonstrates that [Frank] and Joseph Molek intended for [Verna] to have and reside in the farm house, but not to subdivide the Original Tract or [10.515 acres] into equal tracts upon termination of the joint tenancy.

The fact remains . . . that there is substantial competent evidence to support the Trial Court's determination. . . .[3] There was an opportunity for [Verna] and [Frank] to come to an agreement and subdivide their interest in the Original Tract at the time the [Original Tract] was surveyed to convey a parcel to [Frank], and then again three years later when [Verna and Frank] deeded a portion of the Original Tract to Joseph Molek. However, when [Verna] inquired of [Frank] if he would remove his name from the deed of the [10.515 acres] he refused, indicating that there was no agreement to subdivide the [10.515 acres].

Trial Court Opinion, 3/17/15, at 8–9.

Upon review of the record, we discern no basis on which to disturb the trial court's conclusion. Other than her own testimony, *id.* at 52–53, 62, 72–73, 92, 102–103, 114, 119–122, 127–129, Verna proffered no evidence of an agreement among the three siblings to partition the Original Tract. Moreover, even if there were such an agreement, Verna did not present

---

[3] The trial court opined, "Had [Frank] agreed to subdivide the Original Tract or [10.515 acres] into equal 7 acre tracts, the subdivision would have been executed in writing. No such writing for the transfer or conveyance of land has been executed . . . ." Trial Court Opinion, 3/17/15, at 9. We disagree that an agreement to divide the property would have to be executed in writing. The crux of a parol partition is an oral agreement to subdivide a joint tenancy, accompanied by conduct of the parties conducive to the oral agreement; no writing is necessary. **Byers**, 38 A. at 1028.

evidence of acts by "the parties on the land itself, indicating several possession taken in execution of the agreement." **Byers**, 38 A. at 1028.[4] Thus, an agreement alone—if one had been proven—would be "inoperative." *Id.*

Verna testified that when their father died, she and her brothers talked about Verna taking the house, but they did not discuss acreage. N.T., 4/10/13, at 44–45, 118, 155. According to Verna, about six months later, she and Frank discussed each sibling taking seven acres. *Id.* at 52–53, 102–103, 155. Yet, despite opportunities to recognize Verna's several interest in the Original Tract in 1986, 1987, and 1990, the parties did not do so. *Id.* at 67, 120–121, 125–127, 129–131, 216.

Contrarily, Frank testified that Verna suggested he build a house on the Original Tract; so he did, on 4.895 acres, and she did not object. Frank asserted that Verna never said anything to him about seven acres. *Id.* at 50–52, 244, 250. Joseph testified that Verna told him to take what he

---

[4] **Compare Howell v. Mellon**, 42 A. 6, 7–8 (Pa. 1899) ("The partition averred is a division of the land into two nearly equal parts by a line running east and west, of which the north half was taken by Llewellyn, and the south half by John and Phillip. There is evidence of a line having been adopted or run; fences erected in accordance with it; cultivation on their respective sides of the line; old stone corner indicating the course of the line; building of brick dwelling houses for the sons Llewellyn and John,—first, Llewellyn's was built on the northern half, and his initials were put on the house with the date, then John, contemplating marriage, built a brick house on his side of the line, and put on it his initials with the date, 1839; he did marry, and took up housekeeping in that house.").

wanted in July 1986; so he did, taking five acres, and Verna did not object. Joseph asserted that Verna never said anything to Joseph about limiting his share to seven acres. *Id.* at 267, 272, 286, 294. Then, in August of 1990, Frank, as a joint tenant with right of survivorship ("JTWROS"), co-signed a mortgage secured by Verna to remodel the farm house. *Id.* at 71, 135, 251. Additionally, Frank and Joseph took fewer than ten acres combined, so the remaining 10.515 acres would continue to qualify for the tax advantage afforded by the Clean and Green Act.[5] N.T., 4/10/13, at 250. Frank desired the Clean and Green tax advantage for Verna, who had been paying all of the real estate taxes on the Original Tract. *Id.* at 251–252, 256. As a farmer, Joseph was familiar with the Clean and Green Act, and he agreed to take five acres in order to preserve the designation. *Id.* at 267, 288, 299.

As evidenced by his recommendation, the Master credited Frank's and Joseph's testimony and rejected Verna's parol-partition argument. We will not disturb that determination where no extraordinary circumstances exist, as in this case. *Accord In re Novosielski*, 992 A.2d 89, 104 (Pa. 2010)

_____

[5] The Pennsylvania Farmland and Forest Land Assessment Act of 1974 is commonly known as the Clean and Green Act. 72 P.S. §§ 5490.1–5490.13. "In order to encourage conservation, the Clean and Green Program often 'provides a lower tax rate appropriate for land devoted to farming and forest reserve purposes' by enabling landowners to apply for preferential assessments." *Feick v. Berks County Board of Assessment Appeals*, 720 A.2d 504, 505 (Pa. Cmwlth. 1998). Land comprised of ten or more contiguous acres that is in forest reserve is eligible for preferential assessment. 72 P.S § 5490.3(3).

("Absent extraordinary circumstances, an appellate court will not substitute its judgment for that of the fact-finder."). Thus, we conclude that the evidence of record refutes Verna's argument that a parol partition of the Original Tract occurred. Frank and Joseph denied that an agreement existed, and the parties' actions do not indicate several possession of the Original Tract taken in execution of an agreement. *Byers*, 38 A. at 1028.

Additionally, the evidence does not support Verna's argument that a parol partition resulted in Verna's sole ownership of the 10.515 acres. The Master found that there was no agreement for a parol partition and no actual partition of the 10.515 acres, and the trial court affirmed this finding. Master's Report (Findings of Fact), 6/17/13, at ¶¶ 2h and 2i; Trial Court Opinion, 3/17/15, at 9. The record supports this finding. Fatal to Verna's contrary position is the following evidence: Joseph helped to maintain the 10.515 acres and kept cattle on that parcel until 1987 or 1988. N.T., 4/10/13, at 59, 269. Joseph paid for and built the garage in 1978, and he continued to use it as a workshop until 2009. *Id.* at 111, 270. Frank expressly retained his JTWROS interest in the 10.515 acres by refusing to convey it to Verna on several occasions, by contributing to maintenance of the garage Joseph built, the farm house and driveway, and the 10.515 acres (*e.g.*, tearing down a chicken coop, cutting the grass, and harvesting hay), and by co-signing a mortgage secured by Verna in August of 2009 to remodel the farm house. N.T., 4/10/13, at 71, 75, 198, 213–220, 223, 251,

253. This evidence does not demonstrate a parol partition of the 10.515 acres whereby the JTWROS turned their joint possession of the 10.515 acres into several possession. Frank and Verna did not partition the 10.515 acres into purparts, agree on the division line, occupy their individual parts as such, and recognize the respective titles in severalty in each other. **Byers**, 38 A. at 1028.

In sum, the evidence demonstrates an understanding among the siblings that Verna would live in the farm house, and the brothers would live on their own acreage. In support of that understanding, Verna remodeled and moved into the farm house, and the siblings executed a severance of the joint tenancy and two subdivisions of the Original Tract, all supported by deeds, whereby Frank and Joseph established their own homes on separate parcels. Therefore, based on the evidence and credibility determinations, we discern no abuse of the trial court's discretion or error of law in the denial of Verna's exceptions to the Master's determination that no parol partition occurred with regard to the Original Tract or the 10.515 acres.

Next, Verna argues that the trial court erred in adopting the Master's recommended, appraisal-based partition of the 10.515 acres between Verna and Frank. According to Verna, "[t]here is insufficient evidence to support the order of partition recommended by the master and approved by the lower court," *i.e.*, that the 10.515 acres "could be divided into two purparts

without prejudice to or spoiling of the whole property and in purparts proportionate to the parties['] interests."  Verna's Brief at 28.

Pa.R.C.P. 1560 governs partitions and provides as follows:

If division can be made without prejudice to or spoiling the whole, the property shall be divided as follows:

(a) into as many purparts as there are parties entitled thereto, the purparts being proportionate in value to the interests of the parties;

(b) if it cannot be divided as provided in Subdivision (a), then into as many purparts as there are parties entitled thereto, without regard to proportionate value;

(c) if it cannot be divided as provided in Subdivisions (a) or (b), then into such number of purparts as shall be most advantageous and convenient without regard to the number of parties.

Pa.R.C.P. 1560(a-c).

Verna presents four specific challenges to the Master's recommended partition.  First, Verna argues that the Master and the trial court ignored evidence that Verna relies upon a cistern supplied by water from the roof of the barn located on Frank's proposed purpart for all of her non-drinking water.  Verna's Brief at 30.  According to Verna, the recommended partition does not account for the devaluation of Verna's purpart caused by the omission of her non-drinking water source, nor does it account for the fact that Verna will have to obtain a new source of non-drinking water.  *Id.* Consequently, Verna contends, the proposed partition violates Pa.R.C.P.

1570[6] because it fails to consider "division of the property, value of the purparts and the calculation of credits or charges for amounts paid by a party." *Id.* at 31.

The trial court addressed this challenge with the following analysis:

Bearing in mind that [Verna] initiated this action for partition, it is curious that this matter was not contemplated at the Master's hearing. In [Verna's] Exceptions to the Master's Report, filed June 27, 2013, [Verna] asserted that the barn was the source of all non-drinking water.[26] Despite this contention, during argument held on [Verna's] Exceptions this matter was not addressed.

> [26] [Verna's] Exceptions to Masters Report. Pg. 1 ¶ 3; Pg. 2 ¶ 9. Filed June 27, 2013.

Thus, the [t]rial [c]ourt asserts that after a thorough review of the record, and consideration of the two appraisals submitted for the [t]rial [c]ourt's review, there is no evidence that supports [Verna's] contention that the barn is the source of all non-drinking water for [Verna's] residence, or that partition of the barn would have any consequence to the value of [Verna's] purpart.

Trial Court Opinion, 3/17/15, at 10–11.

Upon review, we conclude that the trial court's resolution of this challenge is not supported by the record. We note that the cistern was not discussed at the hearing on Verna's exceptions. However, when asked by the trial court about any other issues, Verna's counsel responded, "There are other minor errors, Your Honor, in there. It's in my brief." N.T., 7/31/14, at

---

[6] Pa.R.C.P. 1570(a) and (b) govern the contents of a partition decision and order, respectively.

22. Included in the brief was Verna's argument that failure to include the cistern in her proposed purpart results in the loss of her non-drinking water source and a devaluation of her property. Memorandum in Support of Plaintiff's Exceptions to Master's Report, 3/11/14, at 8, 10. Thus, Verna's cistern argument was presented to the trial court for consideration.

Moreover, Verna submitted language from the two appraisals prepared by certified appraiser C. Roberta Aul, indicating that "the water source for the dwelling is a 3500 gallon (?) cistern," and "the water runs from the barn roof to [the] cistern near the dwelling." Verna's Brief at 29–30 (citing Joint Exhibits 9 and 10).[7] Thus, contrary to the trial court's finding, the record does contain evidence that Verna relied on the barn for provision of her non-drinking water. The Master failed to address this evidence in the recommended partition, and the trial court erred in failing to consider it when reviewing the Master's recommendation.

Next, Verna challenges the Master's reference to the garage that Joseph built as "Frank's Garage." Verna's Brief at 31. Our review of the notes of testimony indicates that no one disputes it was Joseph who built and maintained the garage referenced by the Master as "Frank's Garage."

---

[7] Joint Exhibit 9 is the October 4, 2011 Residential Appraisal Report prepared by C. Roberta Aul, which valued the farm house and two acres (including the garage Joseph built and the barn) at $81,800.00. Joint Exhibit 10 is the September 28, 2011 Residential Appraisal Report, prepared by C. Roberta Aul, which valued the farm house and 1.4 acres (excluding the garage Joseph built and the barn) at $75,000.00.

N.T., 4/10/13, at 25, 110, 200–201, 270. Moreover, the Master's reference

is not offensive when read in the proper context. The Master found that:

> [Verna], since on or around 1986, has resided in an improvement located on the [10.515 acres], being a frame dwelling having an address of 244 Grange Road, Coal Center, PA 15423 (hereinafter the "House"), and has maintained the House and another improvement located on the [10.515 acres], being a garage located beside the House (hereinafter "Verna's Garage").
>
> * * *
>
> Frank, since on or around 1986, has maintained the remainder of the [10.515 acres], i.e., excluding the House and Verna's Garage, by landscaping the [10.515 acres] and cutting the hayfields on the [10.515 acres], and by maintaining other improvements located on the [10.515 acres], being a barn located behind the House (hereinafter the "Barn"), and being a garage located behind the House and in front of the Barn (hereinafter "Frank's Garage").

Master's Report, 6/17/13, at p. 6 ¶¶ k, n. Clearly, the Master defined the

respective improvements that Verna and Frank used and maintained for the

sole purpose of identifying which buildings and land would be included in

each party's purpart. Because the garage that Joseph built in 1978 would be

included in Frank's purpart, the Master designated it as "Frank's Garage."

Thus, Verna's challenge to the Master's terminology lacks merit.

To the extent Verna challenges inclusion of the garage in Frank's

proposed purpart, the evidence indicates that Joseph used the garage as a

workshop to repair tractors and machinery until 2009. N.T., 4/10/13, at

270. Joseph did not try to include the garage in his acreage because it

would have divided the property in an undesirable way. *Id.* at 301. Verna

did not use the garage. *Id.* at 25, 110, 220. In fact, Verna did not want the garage because "[i]t's in the way. It needs money spent on it to fix it up." *Id.* at 151. Frank, on the other, did want the garage. *Id.* at 227. In light of the testimony, we conclude that inclusion of the garage in Frank's proposed purpart is supported by the record. However, because the garage is situated between the farm house and the barn and Verna does not want the garage, but the barn is Verna's source of non-drinking water, the Master will have to re-evaluate the recommended partition to reach an equitable result with regard to ownership of the garage and the barn.

Verna's third argument challenges the Master's calculation of monies owed to Verna for the payment of necessary home improvements. According to Verna, the Master's conclusion "that Frank's payment for half of the necessary improvements amounted to $5,769.50" was erroneous because:

> the [M]aster and the trial court failed to consider Verna's $371 expenditure in having a new water pump installed, and installation of a new hot water heater and filters for $333.77[,] and payment of $500.00 to Frank for his labor in installing the hot water heater and filters, . . . [and] the charge of $184.87 for hardware for a door at Verna's residence.

Verna's Brief at 32 (internal citations omitted).

The Master made the following findings of fact and conclusions of law with regard to necessary improvements:

> l.     [Verna] made certain repairs or improvements necessary to preserve, safeguard and protect the integrity of the House and Verna's Garage for the common benefit of her

- 17 -

and [Frank]. During the six (6) year period prior to the date of filing of [Verna's] Complaint, [Verna] paid $8,600.00 for repairs to the roof of the House ($7,600.00) and the roof of Verna's Garage ($1,000.00). These repairs were made in good faith, were of a necessary and substantial nature, and materially enhanced the value of the [10.515 acres].

m.    [Verna's] other repairs and maintenance expenses, siding, paint, etc., during the six (6) period prior to the date of filing of [Verna's] Complaint through the present, were cosmetic enhancements or otherwise no necessary improvements.

* * *

p.    [Verna], since on or around 1988, has paid all homeowner's insurance premiums regarding the [10.515 acres]. During the six (6) year period prior to the date of filing of [Verna's] Complaint through and including 2009, [Verna] paid $2,939.00 in homeowner's insurance premiums.

* * *

e.    [Frank] shall contribute to [Verna] fifty percent (50%) of the home insurance premiums paid by [Verna] in connection with the [10.515] acres during the six (6) year period prior to the date of filing of [Verna's] Complaint through and including 2009, totaling $1,459.50 (i.e. $2,939.00 / 2).

f.    [Frank] shall contribute to [Verna] fifty percent (50%) of the cost of necessary improvements paid by [Verna] in connection with the [10.515] acres during the six (6) year period prior to the date of filing of [Verna's] Complaint, totaling $4,300.00 (i.e. $8,600 / 2).

Master's Report, 6/17/13, at 6–7, 10. We note that the trial court did not discuss this particular challenge in its opinion.

"As a general rule, where a cotenant places improvements on the common property, equity will take this fact into consideration on partition and will in some way compensate him for such improvements, provided they are made in good faith and are of a necessary and substantial nature, materially enhancing the value of the common property." ***Bednar v. Bednar***, 688 A.2d 1200, 1205 (Pa. Super. 1997) (quoting 68 C.J.S. Partition, § 139(a)).  Thus, the improvements for which Verna seeks credit must have been necessary to preserve or safeguard the residence.  ***Id.*** Moreover, they must have accrued within six years before she filed her complaint.  ***Id.*** at 1204; 42 Pa.C.S. § 5527(b).

Here, the Master's report does not include a finding about the additional items for which Verna seeks credit.  Yet, Verna and Frank both testified about the need for a new water pump, and Verna provided evidence of the cost for the water pump, hot water heater, filters, and door hardware. N.T., 4/10/13, at 35, 220–221, Exhibits P-3 and P-4.  Common sense dictates that a functioning water pump and a secure door materially enhance the value of a farm house.  These expenses accrued in 2009 and, therefore, were timely as items subject to contribution.  ***Id.***  As a JTWROS, Frank is liable for one-half of the $1,389.64 Verna paid for the water pump, the hot water heater and filters, labor, and the door hardware, which is $694.82. Thus, the Master erred in not adding this sum to the amount Frank owed to Verna, and the trial court erred in affirming that part of the Master's report.

Lastly, Verna challenges the Master's use of Verna's recollection regarding a $3,400.00 per acre signing bonus offered for gas rights to the 10.515 acres in 2008. According to Verna, the Master erred in (a) assuming the amount offered in 2008 would have the same value in 2011; (b) overlooking that the bonus was for the entire 10.515 acres, not just Frank's proposed purpart, (c) failing to consider the potential impact on the value of royalties from a gas lease on the 9.115 acres to be partitioned to Frank; and (d) not employing appraisers pursuant to Pa.R.C.P. 1559 to properly value the 10.515 acres, instead reaching a valuation "cobbled together from different time periods." Verna's Brief at 36.

"Of course, the accuracy of an appraisal cannot be assailed on the ground of the subsequent appreciation of the property." *Appeal of Black*, 18 A. 1064, 1065 (Pa. 1890). However, where the value of the land is affected by the discovery upon it of a valuable resource, *e.g.*, "a mine or the like, it would be equitable to order a revaluation of it." *Id.*

Here, the 2008 gas signing bonus figure was three years old as of the 2011 appraisals. Moreover, the appraiser did not include the signing bonus in her valuations of the farm house with 1.4 acres (Joint Exhibit 9), the farm house with 2.0 acres (Joint Exhibit 10), or the balance of the 10.515 acres eventually allotted to Frank. N.T., 5/29/14, at 17. Rather, the Master added the $3,400.00 bonus to the value of Frank's proposed purpart. Master's Report, 6/17/13, at ¶ 2s. Furthermore, the per-acre valuation of

- 20 -

the real estate was not a Clean and Green valuation; it was an actual acreage valuation and, as discussed below, incongruous. N.T., 4/10/13, at 257. Thus, we conclude the partition recommended by the Master and affirmed by the trial court is not supported by the record.

As for Verna's general sufficiency challenge to the recommended partition, we recognize that equity is "the body of principles constituting what is fair and right." BLACK'S LAW DICTIONARY at 619 (9th ed.). Applying that definition to the record at hand, we conclude that the Master erred in dividing the 10.515 acres into "as many purparts as there are parties entitled thereto, the purparts being proportionate in value to the interests of the parties," pursuant to Pa.R.C.P. 1560(a). Rather, we hold that the record compels a partition pursuant to Pa.R.C.P. 1560(b), which provides that the property shall be divided "into as many purparts as there are parties entitled thereto, without regard to proportionate value." Then, being capable of division under Rule 1560(b), the 10.515 acres should have been "awarded equitably among the parties with appropriate provisions for owelty," pursuant Pa.R.C.P. 1562. The disparate values of the proposed purparts and the parties' specific needs and wants warrant this approach.

Having identified the water source for the farm house as "fair-cistern water," the appraiser explained,

> MARKETABILITY: Typically, homes with cisterns have much lower marketability except to a cash buyer because most lenders will not grant a mortgage on them unless there is a letter from the township that they are typical for the area, and even then it

is questionable as to whether the lenders will accept them for conventional financing. Cisterns are not acceptable for VA or FHA financing.

Joint Exhibit 9, 10/4/11, at 4; Joint Exhibit 10, 9/28/11, at 4. The appraiser further opined that:

the barn and the garage near the barn are in fair to poor condition and have minimal contributory value. If the 0.6 acres in question were to be put on the market, it would also be considered an unmarketable property because there is no individual road access. The property is landlocked and can only be reached by driving through Frank Molek's property or from the [farm house], and there are no public utilities. This parcel has no value to anyone but the Moleks, and it does not enhance the value of the 1.4 acres with the dwelling and the garage.

Joint Exhibit 9, 10/4/11, at 4.

Contradicting the appraiser's opinion that the garage and the barn do not enhance the value of Verna's proposed purpart are indications on Joint Exhibit 9 that, based on comparable sales, the two acres have a value of $3,800.00, and the outbuildings have a value of $3,000.00. Joint Exhibit 9, 10/4/11, at 2. Thus, the difference in valuation of Verna's purpart with and without those outbuildings and supporting acreage is $6,800.00 ($81,800.00 minus $75,000.00 equals $6,800.00).

Also incongruous is the Master's $75,000.00 valuation of Frank's proposed purpart. Master's Report, 6/17/13, at ¶ 2s. Using the Master's calculation results in a $7,855.18-per-acre valuation of Frank's proposed

- 22 -

purpart,[8] which greatly exceeds the range of values for vacant land submitted by the appraiser, *i.e.*, $4,294.00 to $4,626.00 per acre. Joint Exhibits 9 and 10 at Comments Regarding Land Values. Using the average per-acre land value provided by the appraiser, *i.e.*, $4,438.00, the signing bonus, and the value of the outbuildings results in a much lower value for Frank's proposed purpart of $46,852.37.[9] Joint Exhibit 9, 10/4/11, at 2 and Comments Regarding Land. Thus, we conclude that the record does not support the Master's proportion-based partition or the trial court's affirmance.

Additionally, Verna does not want the garage, but she relies on the barn for non-drinking water. N.T., 4/10/13, at 151; Joint Exhibits 9 and 10. She also would like to retain the farm character of her parcel by having additional acreage on which she can keep small animals and plant fruit trees. *Id.* at 102, 149–150, 159. On the other hand, Frank already owns 4.895 acres from the Original Tract, and he wants an additional eight acres, including the garage and the barn. *Id.* at 81, 218, 227.

Simply giving Verna and Frank proportional purparts does not comport with the principles of what is fair and right. Rather, the partition should be

---

[8]  $75,000.00 minus $3,400.00 equals $71,600.00; $71,600.00 divided by 9.115 acres equals $7,855.18 per acre.

[9]  9.115 acres multiplied by $4,438.00/acre plus $3,400.00 plus $3,000.00 equals $46,852.37.

based on what the parties are entitled to without regard to proportionate value and awarded equitably among the parties with appropriate provisions for owelty if warranted. Pa.R.C.P. 1560(b); Pa.R.C.P. 1562. Therefore, equity requires that the Master reevaluate a partition of the 10.515 acres based on an updated appraisal that considers potential gas rights for all 10.515 acres and the Clean and Green designation, as well as the parties' particular needs and wants.

Verna's final issue concerns her detrimental-reliance claim. The trial court consolidated Verna's partition action and detrimental-reliance complaint by order of court dated September 6, 2012. Verna argues that the Master and trial court addressed only the partition action and not her detrimental-reliance claim. Verna's Brief at 38. Frank responds that the Master "considered the relevant facts and laws and reached a complete decision . . . including [Verna's] Equitable Plea for 'Detrimental Reliance'." Frank's Brief at unnumbered page 9. We agree with Frank.

"Detrimental reliance is another name for promissory estoppel." 16 SUMM. PA. JUR. 2D, Commercial Law § 1:40 (2d ed.) (citing **Matarazzo v. Millers Mut. Group, Inc.**, 927 A.2d 689 (Pa. Cmwlth. 2007)). To maintain a promissory estoppel action, a claimant must aver the following elements: (1) the promisor made a promise that it should have reasonably expected would induce action or forbearance on the part of the promisee, (2) the promisee actually took action or refrained from taking action in reliance on

the promise, and (3) injustice can be avoided only by enforcing the promise.

***V-Tech Services, Inc. v. Street***, 72 A.3d 270 (Pa. Super. 2013).

Here, the trial court addressed this challenge as follows:

[A]ll issues at docket number 2012-[3032] have been addressed. In the Complaint in the civil action filed at that docket, [Verna] claimed she relied on the agreement to partition the property to her detriment because, "[Verna], Defendant Frank Molek and Joseph Molek mutually agreed to divide the property deeded to them by their father. . ."[23] In the findings of fact of the Master's Report, that was adopted by the [t]rial [c]ourt, the Master found that "there was no agreement, either written or oral, between [Verna] and [Frank], not at the time of [the] death of Mike Molek, not at the time of any of the above stated deed transfers, and not at any other time, regarding the partition or ownership of the [10.515 acres].[24] The Master also found, "there was no promise or assurance, either written or oral, by [Frank] to [Verna], regarding the partition or ownership of the [10.515 acres].[25]

> [23] Plaintiff's Complaint in Civil Action pg. 7 ¶4. Filed May 5, 2012.

> [24] Master's Report. Pg 5 ¶g. June 17, 2013.

> [25] Master's Report. Pg 5 ¶j. June 17, 2013.

Therefore, the [t]rial [c]ourt finds that the claims raised in the civil action docketed at No. 2012-3032 that were consolidated with No. 2009-5216 have been addressed, and the record supports this finding.

Trial Court Opinion, 3/17/15, at 10.

Upon review, we discern no error. During a break in Verna's direct testimony at the partition hearing, Frank's counsel, Mr. Haines, had "a question about what has occurred so far." N.T., 4/10/13, at 96. The following exchange occurred:

THE MASTER: Let me rephrase the question. Let's say you come back and you have a few more direct questions, plus redirect of Ms. Molek, and let's say either before lunch or after lunch you do the testimony of her additional witnesses. If you finish your case in chief and Mr. Haines presents his evidence, you are not seeking a separate case in chief on the partition action?

[Verna's Counsel] Mr. JULIAN: No.

THE MASTER: Once you're done, you're done. Does that answer your question?

MR. HAINES: That was my question completely. I was a little confused procedurally as to where we were on this.

\* \* \*

MR. JULIAN: I'm not separating the two cases.

N.T., 4/10/13, at 97–98. According to Mr. Julian, the Master was presented with both cases, thus disproving Verna's contrary argument.

Moreover, Verna's detrimental reliance case was based on an alleged oral agreement to partition the Original Tract and/or the 10.515 acres. After receiving testimonial and documentary evidence, the Master specifically found, "There was no promise or assurance, either written or oral, by [Frank] to [Verna], regarding the partition or ownership of the [10.515 acres]." Master's Report, 6/17/13, at ¶ 2j. Having determined that no promise or assurance existed, the Master implicitly rejected Verna's detrimental-reliance case. Thus, we discern no error by the trial court in denying Verna's exception to the Master's ruling on the detrimental-reliance claim.

In sum, we affirm those parts of the trial court's order denying Verna's exception to the Master's determination that no parol partition occurred, her exception to the Master's "Frank's Garage" terminology, and her exception to the Master's resolution of the detrimental-reliance claim. However, we find error in the Master's failure to consider the barn as the source of Verna's non-drinking water, failure to include $694.82 in the sum Frank owes to Verna, failure to use current and complete appraisals for valuation of the entire 10.515 acres, and failure to propose a partition pursuant to Pa.R.C.P. 1560(b). Accordingly, we reverse those parts of the trial court's order denying Verna's exceptions to the Master's recommended partition and remand for proceedings consistent with this Memorandum.

Judgment affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/20/2015